No. 45,268

DOROTHY C. RYDD, *Appellee*, v. STATE BOARD OF HEALTH, STATE OF KANSAS, *Appellant*.

(451 P. 2d 239)

Opinion filed March 8, 1969.

*Robert M. Corbett,* of Topeka, argued the cause and was on the brief for the appellant.

*Richard D. Rogers,* of Manhattan, argued the cause, and *John F. Stites* and *Donald R. Hill,* both of Manhattan, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Primarily, this appeal involves procedural problems in the licensing of a group day care home for children.

Briefly, the state board of health, appellant herein, denied Dorothy C. Rydd a license to operate such a home and she appealed to the district court. That court ruled against appellant on procedural aspects and remanded the proceeding to the board, which has now appealed to this court.

Mrs. Rydd, appellee herein, is the mother of six children, three by a former husband and three by her present spouse. At the time of the hearing in district court the oldest was eleven years of age and the youngest was an infant. Appellee had operated a day care home for children near Manhattan, Kansas, for more than three years. In 1966 she moved to a different address, at the edge of Manhattan, where she had remodeled a house in which to live and operate a group day care home. She applied to appellant board for a license to operate at this new location. Her application was referred to the division of child welfare services of the state department of social welfare for investigation and report. While appellee's application was pending her oldest son Mike, then ten years old, was charged in the juvenile court of Riley county as a dependent and neglected child as a result of mistreatment by his mother. The probation officer for that court made an investigation and reported on three separate instances of alleged abuse, one of a severe beating administered for lying, another in which the boy's head was cut from being knocked against a door frame, and the third in which the back of his hand was cut with a butcher knife.

On November 15, 1966, Mike was found to be a dependent and

neglected child and was removed from appellee's custody and made a ward of the juvenile court. Parental rights were not permanently severed.

November 23, 1966, appellant denied the application for license. Appellant states now that this decision was based on three documents: The report of the probation officer for the Riley county juvenile court, the report of a social worker for the social welfare department and the journal entry of judgment in the juvenile court proceeding. Appellee was given no notice of any hearing on her application nor any opportunity to be present at a hearing.

Appellant's order denying the application was as follows:

"After considering all the evidence and being fully advised of the premises by his staff, Robert H. Riedel, M. D., State Health Officer for the State Department of Health and Executive Secretary for the State Board of Health, does hereby deny this application and order the file closed since the home does not meet the Day Care standards set out in the Department's regulations 28-4-13 since all the staff members directly responsible for the children will not be able to give the proper amount of time nor would all of them be of the proper temperament for looking after children."

Appellant clarifies the first part of its order, referring to all staff members not being able to give the proper amount of time, as being based on the fact appellee was then pregnant with her sixth child. Appellant has virtually abandoned that ground stated in its order, saying now the license was denied primarily because of Mike's mistreatment.

Appellee appealed from the board's order to the district court. That court heard evidence and in a comprehensive memorandum opinion discussed legal principles applicable to administrative bodies and made the following findings of fact and conclusions of law:

"3. That the order of the Kansas State Board of Health denying a license to Dorothy C. Rydd to operate a Group Day Care Center in Manhattan, Kansas, does not set out any findings of fact upon which this order was based.

"4. The Court further finds that the petitioner Dorothy C. Rydd was never given the opportunity of a hearing before the State Board of Health prior to the denial of her license.

"5. The Court further finds that in a proceeding of this nature that before a license may be denied to an applicant, that the State Board of Health must advise said applicant of her right to a hearing and to be represented by counsel, and any order issued must set forth findings of fact supporting the conclusions of law determined by the State Board of Health.

"Conclusions of Law

"1. That the State Board of Health was arbitrary and unreasonable in denying the license of Dorothy C. Rydd for the reason that she was not afforded a hearing by the State Board of Health and that the denial of her license was based upon an *ex parte* investigation of said board, and for the further reason that any order denying a license must set forth in full the facts upon which any decision of the Board is based.

"It is therefore the order of the Court that the application of Dorothy C. Rydd, before the Kansas State Board of Health, for a Group Day Care Center license be reinstated and that the said Dorothy C. Rydd be afforded a hearing before the State Board of Health."

Appellant brings the matter here for appellate review.

We should first note applicable statutes. K. S. A. 65-501 makes it unlawful for anyone to operate a boarding, receiving or detention home for infants or for children under sixteen years of age without a written license from the state board of health. 65-503 defines a boarding home for children.

Other sections of the same chapter provide for license fees, records, equipment, supplies and accommodations for homes to be licensed, and semiannual inspections, and authorize the board to make further needful regulations for the protection of the lives, health and welfare of inmates of the homes to be licensed. 65-504 provides in pertinent part:

"The state board of health shall have the power to grant license to a person, firm, corporation or association to maintain a maternity hospital or home or a home for infants under three years of age, or children under sixteen years of age. . . . No license shall be granted for a term exceeding one year; and the state board of health shall grant no license in any case until careful inspection of the maternity hospital or home or home for infants or children shall have been made according to the terms of this act; and until such maternity hospital or home or home for infants or children has complied with all the requirements of this act. No license shall be granted, without the approval of the division of child welfare services of the state department of social welfare.

"In all cases where the state department of social welfare deems it necessary, an investigation of said home shall be made under the supervision of the division of child welfare services by the county welfare department or other designated qualified agents. . . . In all cases where an investigation is made, a report of the investigation of such home shall be filed with the state board of health.

"Whenever the board of health shall refuse to grant a license to an applicant it shall issue an order to that effect stating the reasons for such denial; and within five (5) days after the issuance of such order shall notify the applicant by certified mail of such refusal by forwarding to such applicant a certified copy of the order.

"When the state board of health shall find upon investigation or is advised by the state department of social welfare that any of the provisions of this act are being violated, or such maternity hospital or home, or home for infants or children is maintained without due regard to the health, comfort or morality of the inmates, it shall after reasonable notice issue an order revoking such license; and such order shall clearly state the reason for such revocation. Such revocation shall be noted upon the face of the record and the board shall give notice in writing of such revocation by forwarding a certified copy of the order to the licensee by registered or certified mail.

"Any applicant or licensee aggrieved by the order of the state board of health in denying or revoking a license may appeal therefrom by filing a petition specifying the action of the board appealed from, in the district court of the county in which the applicant or licensee resides, within thirty (30) days after receipt of a copy of the order of the board, and said court shall have jurisdiction to affirm, reverse, modify or vacate the order complained of if the court is of the opinion that the order was arbitrary, unlawful or unreasonable. Such an appeal shall be tried *de novo* and the court shall receive and consider any pertinent evidence, oral or documentary, concerning the order of the board from which the appeal is taken. . . . Upon receipt of such notice [of appeal], the board of health and the department of social welfare shall, forthwith make available, for examination and inspection, to the applicant and his attorney all their records pertaining to such matter.

"From the judgment of the district court, appeal may be taken to the supreme court as in other civil actions."

Appellant strenuously urges the trial court erred in ruling a hearing must be afforded an applicant before denial of a license under 65-504. It points out the fact the statute makes no such requirement, and that the statute was followed. Appellant says, despite lack of statutory requirement, it customarily grants a hearing when one is requested, but none was requested here. It argues if a hearing is to be held mandatory, then 65-504 should be ruled unconstitutional as a denial of due process, but that without statutory authority an administrative hearing should not be ordered. Appellee, in turn, makes no constitutional attack on 65-504, only on its use by appellant.

This court has on several occasions held that legislation is not rendered constitutionally invalid because of omission of certain procedural safeguards which may be supplied, by rule or otherwise, by the agency administering the law (see *Brankley v. Hassig*, 130 Kan. 874, 289 Pac. 64). In *Cities Service Gas Co. v. State Corporation Commission*, 192 Kan. 707, 391 P. 2d 74, it was stated:

". . . this court has recognized the rule that where no express provision for notice is made in the statute, if there be nothing in the statute which prevents notice from being given, the requirement of reasonable notice

will be implied. [Citations] In reality, the court simply reads the provision into the statute in order to uphold its validity as against the Fourteenth Amendment and Sections 2 and 18 of the Bill of Rights of the Constitution of Kansas." (p. 713.)

Should an opportunity for hearing after reasonable notice be required under 65-504 prior to *denial* of a license *under the particular circumstances of this case?*

Before answering this question we should look again at the nature of the reason given for denial of the license: ". . . nor would all of them [staff members directly responsible for the children] be of the proper temperament for looking after children." This order was based upon the board's rule which provides:

"All staff members directly responsible for children shall be qualified to give care to children by temperament, emotional maturity, sound judgment, education, experience, and an understanding of children." (1 Weeks, K. A. R. 28-4-13 [c].)

The reason given went to appellee's individual fitness or character and to that extent was adjudicative in nature. The denial was not the result of a test or examination nor because from inspection the proposed premises failed to meet required specifications. The license was denied because of particular facts pertaining to the appellee—the kind of facts which normally ought not to be found without allowing the party a chance to rebut, explain and cross-examine (see 1 Davis, Administrative Law Treatise, § 7.20).

Formerly emphasis was placed on the distinction between a privilege and a right, and a license was sometimes held to be a privilege which could be withheld without regard to procedural niceties. Now few licenses are regarded as privileges in terms of procedure required. The tendency seems to be that a trial type hearing is required on issues of adjudicative fact where important interests are at stake (1 Davis, Administrative Law Treatise, § 7.18). In *Goldsmith v. Bd. of Tax Appeals,* 270 U. S. 117, 70 L. ed. 494, 46 S. Ct. 215, an accountant, who was qualified to practice in New York, had applied for admission to practice before the United States Board of Tax Appeals. The board rejected the application upon charges of unfitness without giving him opportunity to be heard. Of the board's rule that "the Board may in its discretion deny admission" the court said "this must be construed to mean the exercise of a discretion to be exercised after fair investigation, with such a notice, hearing and opportunity to answer for the applicant as would constitute due process." The court further stated the appli-

cant should not have been rejected upon charges of unfitness without giving him an opportunity by notice for hearing and answer. The charges in the Goldsmith case were adjudicative facts relating to the particular individual, in which instance the court made clear that due process entitled the applicant to a chance to rebut and explain the evidence against him.

In *Schware v. Board of Bar Examiners,* 353 U. S. 232, 1 L. ed. 2d 796, 77 S. Ct. 752, involving an applicant for admission to the bar, the court held that whether the practice of law is deemed a right or a privilege, an application for admission is governed by the principle of procedural due process, declaring:

"A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." (pp. 238, 239.)

In *Willner v. Committee on Character,* 373 U. S. 96, 10 L. ed. 2d 224, 83 S. Ct. 1175, the court held that one who had passed the New York bar examination was entitled to notice of, and a hearing upon, the grounds for his rejection. The court said it was concerned "with what procedural due process requires if the license [to practice law] is to be withheld" and further that "procedural due process often requires confrontation and cross-examination of those whose word deprives a person of his livelihood." (p. 103.)

In *Matter of Perpente v. Moss,* 293 N. Y. 325, 56 N. E. 2d 726, a refusal to grant a license to conduct an employment agency was challenged on the ground no hearing had been had. The court held:

"Though formal hearings and formal findings may not be required, a license may not be refused on the ground that the applicant 'is not a person of good character' unless the applicant has fair opportunity to meet a challenge to his good character and unless the court of review is apprised of the basis for the finding against the applicant. The procedure of the Commissioner must conform to recognized standards of fairness and a record must be made which permits a review of the action of the Commissioner by the court." (p. 329.)

*Bennett v. Arizona State Board of Public Welfare,* 95 Ariz. 170, 388 P. 2d 166, presented a factual situation similar to the case at bar. There petitioner, who had previously operated a nursery, was, without hearing, denied a license to operate a child's care nursery. The court stated:

"We observe, as did the United States Supreme Court, that the multiplication of administrative agencies and the expansion of their functions to include adjudications which have serious impact on prior rights has been one of the

dramatic legal developments of the past one-half century. *Wong Yang Sung v. McGrath,* 339 U. S. 33, 70 S. Ct. 445, 94 L. Ed. 616." (p. 172.)

Further:

"It is too well settled, to permit any argument to the contrary, that procedural due process requires petitioner be given an opportunity to be heard upon the matters which the Board of Welfare acted in denying a license. . . . Petitioner must be given notice of time and place of hearing, a reasonable definite statement of the grounds for denial of her application, the right to produce witnesses in her own behalf, the right to examine witnesses who testify against her and a full consideration and a fair determination according to the evidence by the body before whom the hearing is had." (p. 173.)

We have little precedent of our own in the licensing area but in *Cities Service Co. v. Koeneke,* 137 Kan. 7, 20 P. 2d 460, the court dealt with the state bank commissioner's refusal to give approval to the plaintiff to list its stock pursuant to statute, without plaintiff being given notice and opportunity for a hearing, and roundly denounced the procedure employed. This court has always taken cognizance of the procedural requirements of due process. In *Carrigg v. Anderson,* 167 Kan. 238, 205 P. 2d 1004, it is stated:

"The fundamental requisite of due process is *notice* and an *opportunity for a full and complete hearing.*" (p. 246.)

In *Wichita Council v. Security Benefit Ass'n,* 138 Kan. 841, 28 P. 2d 976, a case involving bylaws of a fraternal benefit society providing for expulsion without notice or hearing, the court said:

"Generally speaking, both our federal (5th and 14th amendments) and state (bill of rights, § 18) constitutions provide for due process of law. Whatever may be said of the exact definitions of that term, said to be synonymous with 'the law of the land' (12 C. J. 1189), it is well settled that its 'essential elements . . . are notice, and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case.' " (p. 847.)

Appellant argues appellee had her requisite due process when she presented her side of the matter to the district court. This argument does not take into account the limited authority the the district court has upon appeal, particularly the constitutional limitation imposed by the separation of powers doctrine upon the judiciary in review of actions of administrative agencies, to which doctrine this court has always been committed.

The scope of judicial review of administrative action was recently discussed in *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 436 P. 2d 828, and summarized:

"A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a mat-

ter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority." (Syl. ¶ 1.)

In that case a medical license had been revoked by the licensing agency upon the ground of professional incompetence. The licensee argued, in effect, the district court upon appeal could make its own findings *de novo* on the issue of competence. This court rejected the argument, saying: "Courts are not to be thus thrust into the licensing business." (p. 451.)

It is true the appeal statute here (65-504) provides for trial *de novo;* however, as in *Foote,* the statute is to be construed in the light of the constitutional inhibition prescribed by the separation of powers doctrine. This means the legislature may not impose upon the judiciary the function of a trial *de novo* of action of an administrative agency in the sense of authorizing the court to substitute its judgment for that of the administrative agency in matters other than law or essentially judicial matters.

65-504 authorizes the court to act if it finds the board's order arbitrary, unlawful or unreasonable. The issue, then, before the district court upon appeal is the reasonableness and legality of the order appealed from. Upon that issue the trial is *de novo,* but that does not mean the district court is at liberty to make an independent finding on the right to a license. Hearing before a district court upon appeal is thus not the equivalent of the initial hearing before the licensing agency which has the responsibility of weighing controverted evidence and arriving at an independent judgment, on the merits, as to entitlement to a license.

Appellee concededly had a significant interest at stake in appellant's action on her application for license. We are aware of no societal interest sufficient to deny her notice and hearing prior to denial of that application, and none is urged by appellant. Other regulatory statutes which it administers call for notice and hearing prior to adverse action; for example, K. S. A. 65-430 provides for notice and opportunity for hearing prior to denial of a license to operate a hospital. Appellant is authorized to appoint hearing officers (K. S. A. 74-901e) and has supplemented this authority by its own rules governing hearings (1 Weeks, K. A. R. 28-3-1, *et seq.*). The scope of appellant's current child care licensing program is shown in Kansas Biennial Report, 1968, pp. 388-395.

We hold then that procedural due process requires that an

applicant for license pursuant to 65-504 be given notice and opportunity for hearing by the state board of health before he may be denied a license on the ground of personal unfitness. This result we reach is in harmony with the broad remedial purpose sought by the proposed Revised Model State Administrative Procedure Act (1967 Supp. 9C U. L. A. 142-161) and the Federal Administrative Procedure Act (5 U. S. C. 1964 ed., §§ 1001 *et seq.*), although neither has application in Kansas. In leaving the point, it should be noted we make no attempt to prescribe a single rule applicable to denial of all licenses.

Appellant also challenges other of the trial court's rulings. It says the court erred in holding that the order denying a license must set forth in full the facts upon which the decision of the board was based. Essentially, we agree with the court's ruling.

The statute (65-504) provides: "Whenever the board of health shall refuse to grant a license to an applicant it shall issue an order to that effect stating the reasons for such denial. . . ."

We think the sense of the foregoing proviso is that the grounds upon which an administrative agency has acted should be clearly disclosed. Reasons for such a requirement were well stated in *Kansas Public Service Co. v. State Corporation Commission,* 199 Kan. 736, 433 P. 2d 572, as follows:

"The requirement that an administrative agency such as the State Corporation Commission make basic findings of fact is to facilitate judicial review, avoid judicial usurpation of administrative functions, assure more careful administrative consideration to protect against careless and arbitrary action, assist the parties in planning their cases for rehearing and judicial review, and keep such agency within its jurisdiction as prescribed by the Legislature." (Syl. ¶ 2.)

See, also, *Cities Service Gas Co. v. State Corporation Commission,* 201 Kan. 223, 440 P. 2d 660.

In order for a reviewing court under 65-504 to determine whether the decision reached is reasonable and lawful, it is necessary the decision contain the pertinent facts upon which it is based. A mere statement of a generality or of a general conclusion, such as found in the order in question, does not reach the degree of specificity required. The evidence need not be detailed or even summarized but a concise, explicit statement of the basic, underlying facts relied upon to support the order should be given.

Appellant contends the trial court erred in remanding the cause to it for hearing upon appellee's application. The statute provides

the court may "affirm, reverse, modify or vacate the order complained of." We have already determined appellee was not afforded fundamental due process. And we have indicated it would have been beyond the scope of the trial court's authority to make its own independent finding on the merits of appellee's fitness for a license. That function lay exclusively with the board. As the matter stood, the court could have made no conclusive order in favor of either of the litigants without substituting its judgment for that of the board. What course then could have been taken by the trial court other than to remand the proceeding for further hearing? We think none. The trial court's order in effect set aside appellant's denial order and left appellee's application as a pending matter before appellant, to be heard and disposed of by appellant on the merits, procedural due process to be observed. In 2 Am. Jur. 2d, Administrative Law, § 764, the rule is stated:

". . . the general rule is that even in the absence of statute, a court which sets aside an administrative determination has the power to remand the case to the administrative agency where such power is necessary to effectuate the demands of justice, and statutes frequently grant such authority to the courts. The court does not encroach upon the administrative function by such procedure, and there is nothing in the principles governing judicial review of administrative acts which precludes the courts from giving an administrative agency an opportunity to meet objections to its order by correcting irregularities in procedure, or supplying deficiencies in its record, or making additional findings where these are necessary, or supplying findings validly made in the place of those attacked as invalid."

The rule is further elaborated in the same work § 765, as follows:

"The court must remand, or the administrative agency is entitled to have the proceeding returned to it, where the agency has taken action without meeting procedural requirements, has made invalid, inadequate, or incomplete findings . . . where judicial review discloses material errors but the reviewing court cannot enter a conclusive order. . . ."

The trial court properly remanded the proceeding.

Although it does not affect the case's immediate disposition, one further matter as to a reviewing court's authority in this kind of action remains which we deem appropriate to discuss. The trial court concluded it could not consider evidence which had not been presented to the state board of health. The lack of uniform requirements and resultant practice in recording evidence supporting administrative action, as well as the indiscriminate use of the term trial *de novo*, has contributed to some confusion in our law and points up the desirability of greater uniformity in our statutes gov-

erning hearings by administrative agencies and judicial review of their actions. This problem was recently discussed in *Bodine v. City of Overland Park,* 198 Kan. 371, 424 P. 2d 513, where it was stated that evidence submitted upon judicial review of a zoning action was to be received in accord with our evidentiary code (K. S. A. Chap. 60, Art. 4). The trial in district court then is *de novo* in the sense the court may take its own evidence and is not necessarily limited to the evidence presented before the administrative board. The power to receive and consider such evidence, however, is not to be employed for the purpose of enlarging the scope of judicial review—the test being, the evidence must be *relevant* to the limited issue before the court on appeal; namely, the reasonableness and legality of the order appealed from. Aside from this, 65-504 expressly provides ". . . the court shall receive and consider any pertinent evidence, oral or documentary, concerning the order of the board from which the appeal is taken."

The judgment appealed from was correct and it is affirmed.

APPROVED BY THE COURT.