No. 48,428

ELVA G. BRINSON, Petitioner, *Appellee and Cross-Appellant,* v.
SCHOOL DISTRICT # 431, Respondent, *Appellant.*

(576 P.2d 602)

Opinion filed February 25, 1978.

*Christopher Randall,* of Turner, Hensley and Boisseau, Chartered, of Great Bend, argued the cause, and *Raymond L. Dahlberg,* of the same firm, and *Jerry L. Griffith,* of Hoisington, were with him on the brief for the appellant.

*Tom Kelley,* of Dreiling, Bieker & Kelley, of Hays, argued the cause, and *Thomas L. Toepfer,* of the same firm, was with him on the brief of appellee and cross-appellant.

The opinion of the court was delivered by

FROMME, J.: Elva G. Brinson, a school teacher employed in the Hoisington school system, was terminated by the school board in June, 1974. She filed her grievance in accordance with the established grievance procedure of the school district. The board after holding a grievance hearing refused to reinstate her. She then appealed to the district court under authority of K.S.A. 1974 Supp. 60-2101(*a*) (now K.S.A. 60-2101[*d*]). The district court heard the matter *de novo,* it refused to reinstate the teacher but it held she had been improperly terminated and ordered the district to pay her a year's salary less certain sums in mitigation of damages.

On appeal the Court of Appeals in an unpublished opinion filed June 17, 1977, reversed the judgment of the district court. The Court of Appeals held the district court exceeded the scope of review authorized by K.S.A. 1974 Supp. 60-2101(*a*) when it heard the matter *de novo.* The Court of Appeals found there was substantial evidence to support the decision of the board and that the board had not acted in an unreasonable or arbitrary manner. It reversed the judgment of the district court. We agree with its decision.

The case is before this court on a petition filed by Elva G. Brinson for review of the decision of the Court of Appeals. At the outset it should be noted that the grievance procedure followed by the teacher and the board in this matter is not that provided for in K.S.A. 1977 Supp. 72-5436, *et seq.* The latter statute did not originally come into being until July 1, 1974. However, no question is raised concerning the sufficiency of the grievance procedure established by the school district and followed by the parties in this case. The procedure followed is referred to in the record as the "Employees' Grievance Procedure according to Board Policy # 9-9 of the Hoisington U.S.D. 431 Board of Education Policy Handbook."

On review in this court Elva G. Brinson urges three reasons for reversing the decision of the Court of Appeals. First, she contends the proper scope of review in the district court was a trial *de novo* in the strict legal sense; second, the district court properly held the school board acted arbitrarily since there was no substantial evidence to support its decision; and third, she contends the Court of Appeals' opinion is inconsistent with the continuing contract law, K.S.A. 72-5410, *et seq.*

In support of her first argument Mrs. Brinson cites various cases decided in this court or in the Court of Appeals. None of the cases cited covers an appeal under authority of K.S.A. 1974 Supp. 60-2101(*a*). We will discuss these cases later but first it is well to review some of the basic decisions of this court on the scope of review in the courts, and it should be kept in mind that this state has no general administrative procedure act governing review of administrative orders.

The right to an appeal in this state is neither a vested nor constitutional right, but is strictly statutory in nature. It may be limited by the legislature to any class or classes of cases, or in any manner, or it may be withdrawn completely. It lies within the legislative domain to determine from what orders or judgments an appeal may be taken. (*In re Waterman*, 212 Kan. 826, 830, 512 P.2d 466; *State v. Burnett*, 222 Kan. 162, 166, 563 P.2d 451.) Courts have no inherent appellate jurisdiction over the official acts of administrative officials or boards except where the legislature has made some statutory provision for judicial review. (*In re Chicago, R. I. & P. Rly. Co.*, 140 Kan. 465, 467, 37 P.2d 7; *City of Kansas City v. Jones & Laughlin Steel Corp.*, 187 Kan. 701, 703, 360 P.2d 29.) In the absence of a statutory provision for appellate review of an administrative decision no appeal is available but relief from illegal, arbitrary and unreasonable acts of public officials and boards can be obtained by using such equitable remedies as quo warranto, mandamus, or injunction. (*State, ex rel., v. Unified School District*, 218 Kan. 47, 50, 542 P.2d 664.)

In this state the legislature has provided an omnibus statute authorizing appeals to the district court from orders of any tribunal, board or officer exercising quasi-judicial functions. This authorization at the time of the present appeal was K.S.A. 1974 Supp. 60-2101(*a*), now K.S.A. 60-2101(*d*). As in the case of all

general statutes 60-2101(*a*), now (*d*), does not apply to appeals where a special statute has been provided by the legislature. Examples of special appeal statutes affecting decisions of administrative boards may be found in K.S.A. 8-259, 65-504, 44-1011, 65-2848, and 44-556. The scope of review provided by the legislature under any appeal statute depends upon the intent of the legislature as expressed in each particular statute and as interpreted by this court. See *Lira v. Billings,* 196 Kan. 726, 414 P.2d 13; *Rydd v. State Board of Health,* 202 Kan. 721, 451 P.2d 239; *Stephens v. Unified School District,* 218 Kan. 220, 546 P.2d 197; *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 436 P.2d 828, 28 A.L.R.3d 472; *Gawith v. Gage's Plumbing & Heating Co., Inc.,* 206 Kan. 169, 476 P.2d 966.

There is no special statute to cover appeals from orders of a school board. So in the present case we must look to the omnibus statute, K.S.A. 1974 Supp. 60-2101(*a*). This statute provided:

"A judgment rendered or final order made by a court or any other tribunal, board or officer exercising judicial or quasi-judicial functions, and inferior in jurisdiction to the district court, may be reversed, vacated or modified by the district court. . . . The clerk shall thereupon docket the same as an action in the district court, which court shall then proceed to review the same, either with or without additional pleadings and evidence, and enter such order or judgment as justice shall require. . . . When an action is filed in the district court on appeal or removal *from an inferior court the jurisdiction of the district court shall not be limited to only such matters as were within the jurisdiction of the lower court, and the district court may by order permit the issues to be enlarged* in the same manner and to the same extent as if the action had been originally commenced in the district court." (Emphasis supplied.)

It should be noted the last sentence in the statute which we have emphasized applies to inferior courts and not to administrative agencies. In construing this statute for the purpose of determining the scope of review of administrative orders authorized by the legislature we note the provision limiting the review to orders of boards exercising quasi-judicial functions. This reference is an acknowledgment of the separation of powers doctrine. This doctrine is explained in *Rydd v. State Board of Health,* supra:

"By reason of the constitutional inhibition known as the separation of powers doctrine, the legislature may not impose upon the judiciary the function of a trial *de novo* of action of an administrative agency in the sense of authorizing the court to substitute its judgment for that of the administrative agency in matters other than law or essentially judicial matters." (Syl. ¶ 4.)

In *Rydd* this court interpreted the special statute authorizing an appeal from an order of the State Board of Health denying a license to operate a child care home. The appeal statute was K.S.A. 65-504. This court held that licensing is a purely administrative function, not quasi-judicial, and that the scope of review provided by the statute had to be limited to the three-pronged test set forth in *Kansas State Board of Healing Arts v. Foote,* supra, at Syl. ¶ 1. This is because of the constitutional separation of powers doctrine. So, the reference in 60-2101(*a*), *supra,* to quasi-judicial functions is a recognition by the legislature of the limitation on review of administrative orders arising by reason of the separation of powers doctrine. The limitation is recognized in *Powers v. State Department of Social Welfare,* 208 Kan. 605, 608, 493 P.2d 590, when this court stated that the review of a decision by an administrative board as authorized by K.S.A. 1974 Supp. 60-2101(*a*) is limited to decisions of administrative boards that exercise quasi-judicial functions. This omnibus statute authorizes review only if no special statute authorizes an appeal.

Under the decisions of this court the scope of review provided by the legislature in K.S.A. 1974 Supp. 60-2101(*a*) does not authorize a district court to try the issues previously decided by an administrative agency *de novo.* The statute was so construed and limited in *Lauber v. Firemen's Relief Association,* 202 Kan. 564, 451 P.2d 488. There we hold:

"The provisions of K.S.A. 60-2101(*a*) are construed and it is *held* they do not authorize the district court to consider an appeal from an administrative agency or tribunal in a trial *de novo,* nor do they enlarge the jurisdiction of the district court to review administrative matters beyond limitations heretofore imposed by the law of this state. The application of the provision therein for expanded jurisdiction over appeals from judicial bodies lies only in cases where the district court would have had original jurisdiction in the first instance." (Syl. ¶ 2.)

In reviewing a decision of an administrative agency or tribunal under authority of K.S.A. 1974 Supp. 60-2101(*a*) a district court may not substitute its judgment for that of the administrative agency or tribunal; it is limited to deciding whether: (1) The agency or tribunal acted fraudulently, arbitrarily or capriciously; (2) the administrative order is substantially supported by evidence; and (3) the tribunal's action was within the scope of its authority. (*Lauber v. Firemen's Relief Association,* supra; *Copeland v. Kansas State Board of Examiners in Optometry,* 213 Kan. 741, 518 P.2d 377; *Neeley v. Board of Trustees, Policemen's &*

*Firemen's Retirement System,* 205 Kan. 780, 782, 783, 473 P.2d 72.)

Therefore the district court erred in the present appeal in examining the issues *de novo* and in substituting its judgment for that of the school board. The legislature did not authorize judicial review to that extent in K.S.A. 1974 Supp. 60-2101(*a*).

We turn to the cases relied on by Mrs. Brinson to support *de novo* review. The first case is *Stephens v. Unified School District,* 218 Kan. 220, 546 P.2d 197. *Stephens* was an appeal from an order of the Kansas Commission on Civil Rights (KCCR). The authority for judicial review of a KCCR order is set forth in K.S.A. 44-1011. This special appeal statute was construed by this court in *Stephens* as authorizing review by trial *de novo.* The statute provides for a full trial of all issues. The functions of the KCCR were examined and held to be quasi-judicial in nature so the *de novo* scope of review did not conflict with the separation of powers doctrine.

The next case relied on by Brinson is *Schulze v. Board of Education,* 221 Kan. 351, 559 P.2d 367. This is not a scope of review case. That action was brought directly in the district court against the board for alleged libel and slander. The decision of this court that the board was acting in a quasi-judicial capacity was for the purpose of determining the extent of immunity from liability which the board enjoyed.

The case of *Gawith v. Gage's Plumbing & Heating Co., Inc.,* supra, is also not in point. The appeal in that case was from the award of the Workers' Compensation Director to the district court. The review is authorized by a special appeal statute, K.S.A. 44-556 as amended. The question raised in that case was whether the separation of powers doctrine would permit a review in the district court *de novo.* It was held that the director's function was quasi-judicial in nature and that the legislature could properly authorize a trial *de novo* without violating the separation of powers doctrine.

One final case cited by Mrs. Brinson should be discussed, *i.e., Gonser v. Board of County Commissioners,* 1 Kan. App. 2d 57, 562 P.2d 102. It is argued that the case is authority for the rule that the scope of review on appeal in a district court is determined by the nature of the particular act from which the appeal is taken. In other words, if the board is acting on a purely administrative or

discretionary matter the review is limited in scope but if it is acting on a quasi-judicial matter the review in that case under the same statute must be *de novo*. This is not a correct statement of the law and *Gonser* is not authority for such a rule. The scope of review in each case must be determined first from the legislative authority set forth in the statute which authorizes such appeal. If a quasi-judicial function is to be reviewed the legislature in such case may authorize either a limited review or a *de novo* review. If a limited review is all the legislature has authorized this scope of review applies to both administrative and quasi-judicial acts. The statute authorizing review in *Gonser* was K.S.A. 19-223. The Court of Appeals concluded that the trial court correctly decided the appeal under a limited scope of review because of the separation of powers doctrine. The action of the board of county commissioners on review was administrative and discretionary in nature (termination of a traffic safety program).

In order to review Mrs. Brinson's second point a brief review of the evidence before the board is required.

Elva Brinson was employed by the board as a "Title One" teacher for five years. At the time of the events pertinent to the appeal, she was president-elect of the Hoisington Area Education Association and a member of the association's negotiating team. On May 8, 1974, the board submitted to Mrs. Brinson a proposed contract for the coming year. The contract offered no increase in salary and contained a clause providing that advancement in salary would not be automatic. She testified she found the latter objectionable. Mrs. Brinson testified she made inquiries as to whether she was covered by the continuing contract law (K.S.A. 72-5410, *et seq.*) and that she was told by an individual who was neither a member of the board nor a representative of the school administration that she was covered by that law. Mrs. Brinson then wrote the following note addressed to her supervisor, Kelso Deer:

"To:   Kelso

"1.   I consider the terms and conditions of the enclosed contract a *professional insult*, as well as, a *personal insult.*

"2.   I never have 'brown-nosed' and I have no intention to start now.

"3.   If this contract is what A.C.E. 'negotiated,' may God help the kids of U.S.D. No. 431.

"4. 'Thanks' for four wonderful years and one 'not so wonderful' year teaching at Hoisington as your subordinate.

"/s/ Elva B."

Sometime in mid-May, Mrs. Brinson showed the note along with her unsigned contract to Alan Jirik, the principal at the school in which she worked. She informed Jirik she was "snubbing $8,000," the approximate amount of the new contract, and asked permission to see Deer. In his testimony before the board, Jirik initially said he assumed petitioner meant she was resigning. Later in his testimony, Jirik said he could not really say whether petitioner intended to resign or not.

Petitioner then took the note and unsigned contract to Deer, who read the note in petitioner's presence. There was little or no conversation between the two; however, Deer testified he construed the note as a letter of resignation "clear and simple." He also testified that most resignations end with a "thank you" clause similar to Mrs. Brinson's. Deer delivered the note to the Superintendent of Schools, Walter Smith, who in turn presented it to the board at its next meeting on June 3. Mrs. Brinson's note was unanimously accepted by the school board as a resignation. A replacement was immediately hired.

Smith testified it was generally understood in the school district that the return of an unsigned contract was considered by the school board as a resignation. Smith stated many letters accepted as resignations by the board did not include the word "resignation" in them.

There was evidence in the record that Mrs. Brinson had, at the end of the school year, removed a large part of the personal items in her classroom to a pickup truck and gave another teacher some of her classroom books. Mrs. Brinson claimed she removed her personal items because she needed the materials for summer tutoring and also because she was changing classrooms for the following year.

Mrs. Brinson testified she told several people she intended to continue her employment under the continuing contract law. Apparently she did not communicate that intention to school district administrators. At the hearing she claimed the note was not a resignation but was intended as a courteous expression of her appreciation for the first four years of employment under Deer's supervision. Petitioner further testified she learned on

June 4 that her note had been accepted as a resignation by the school board. She testified she was shocked to discover her note had been so construed. She steadfastly maintained her only intention was to continue her employment under the terms of her old contract pursuant to the continuing contract law.

At the end of the final grievance hearing it was determined by the board that petitioner had resigned and the resignation had been accepted and acted on by the school board.

On the basis of the foregoing facts, we are unable to say the school board acted fraudulently, arbitrarily or capriciously, or that the decision of the board was not substantially supported by evidence, or that the board was acting outside the scope of its authority.

There appears to be substantial evidence to support a finding that Mrs. Brinson tendered her resignation and it was accepted by the board. Substantial evidence has been defined as that which possesses relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. *Morra v. State Board of Examiners of Psychologists,* 212 Kan. 103, 510 P.2d 614. The standard has been met in this case. The district court's conclusion that the school board's decision was erroneous and arbitrary is in error.

We turn to Mrs. Brinson's contention that the Court of Appeals' opinion is inconsistent with the continuing contract law.

K.S.A. 72-5411 reads:

"All contracts of employment of teachers in the public schools in the state, shall continue in full force and effect during good behavior and efficient and competent service rendered by the teacher, and all such contracts of employment shall be deemed to continue for the next succeeding school year unless written notice of intention to terminate the contract be served by the governing body upon any such teacher on or before the fifteenth day of March or the teacher shall give written notice to the governing body of the school district on or before the fifteenth day of April that the teacher does not desire continuation of said contract. Terms of a contract may be changed at any time by mutual consent of both the teacher and the governing body of the school district."

This law requires written notice of termination by a teacher on or before April 15, and in the absence of written notice the contract continues for the succeeding school year. It is argued that the opinion of the Court of Appeals, holding that the continuing contract was terminated by mutual assent, in some way conflicts with the continuing contract law. We cannot agree.

The law referred to speaks to what is required in case of unilateral termination of a teacher's contract of employment. There is nothing in the statute which prevents termination by mutual assent. We see no reason why a contract of employment between a teacher and a school board should be any different than any other contract. Parties to a contractual transaction may mutually rescind the transaction although neither party had a right to compel a rescission. *(Owens v. City of Bartlett,* 215 Kan. 840, 844, 528 P.2d 1235.) Parties to a contract may rescind by acts or conduct inconsistent with the continued existence of the contract. Mutual assent to abandon a contract may be inferred from the conduct of the parties and the attendant circumstances. Rescission depends upon the intention of the parties as shown by their acts, words, or written expressions. *(Owens v. City of Bartlett,* supra; 17 Am. Jur. 2d, Contracts, § 494, p. 967.) We hold a teacher's contract of employment in effect by reason of the provisions of the continuing contract law (K.S.A. 72-5410, *et seq.*) nevertheless may be terminated by mutual assent of the teacher and the school board. In this case there was substantial evidence of rescission by mutual assent even though the evidence was conflicting and subject to different conclusions. Under the limited scope of review authorized in this case we cannot say the school board acted in an unreasonable or arbitrary fashion.

Accordingly we affirm the opinion of the Court of Appeals and reverse the judgment of the district court.

MILLER, J., dissenting: Although I agree with the principles of law enumerated in the majority opinion, I am unable to agree with the application of those principles to the facts of this case, and therefore I respectfully dissent.

The majority's holding is that the district court erred "in examining the issues *de novo* and in substituting its judgment for that of the school board," and that "In this case there was substantial evidence of rescission by mutual assent . . ." As I read the record, the initial evidentiary hearing before the board of education was conducted on September 26, 1974. Witnesses testified and exhibits were introduced. Shortly thereafter the board ruled—and not surprisingly—that Mrs. Brinson had indeed resigned, just as the board had contended all along. No written order of the board is included in the record, so we do not know what findings of fact the board made. We must examine the

record to see what the facts are—just as the district court did.

Mrs. Brinson appealed the board's decision to the district court. The transcript of the testimony taken before the board, together with the exhibits there presented, constituted the entire record before the district court. The district court's findings of fact, with the exception of the last eighteen words, may well have been the board's findings of fact; at least they would appear to be undisputed.

The findings are as follows:

### "FINDINGS OF FACT

"1. Petitioner has been employed as a teacher in Unified School District No. 431, Barton County, Kansas, for more than two years before March 15, 1974, as a certified teacher.

"2. On March 15, 1974, she was employed under a written contract covering the 1973-1974 school year.

"3. No new contract was ever entered into between the parties and no written notice of discontinuance of employment was given by either party before April 15, 1974.

"4. A few days before May 8, 1974, respondent offered a new contract to petitioner which was returned by her unsigned and as to which she appended a note addressed to her immediate superior. The note is reproduced as 'Exhibit A' of petitioner's brief and incorporated herein by reference.

"5. The only material content of the note is item number '4,' and it is ambiguous.

"6. Actions of petitioner in giving some books to another teacher and loading things in a pickup *are considered in the light of moving a reading room and evidence no clear intentions that are material.*" (Emphasis supplied.)

The trial court then ruled as a matter of law that by operation of K.S.A. 72-5411, the parties were equally bound to the other for an additional year as a legal extension of the 1973-1974 contract; that Mrs. Brinson's note, set forth in the majority opinion, is ambiguous and is not a clear, positive and unequivocal resignation; that the board's conclusion that Mrs. Brinson resigned was erroneous and arbitrary; and that the board must therefore pay her salary for one year, less any reduction because of mitigation. In effect, the district court found that the order of the board was not supported by substantial competent evidence; and the court proceeded to enter a proper order.

I cannot but agree with the district judge. Evidence that a teacher gives a few books to a colleague, or that a teacher takes her teaching materials home during the summer months, does not evidence a voluntary resignation. Likewise, the fact that a teacher does not sign a new contract, proffered long after the continuing

contract law has extended a prior contract for another year, evidences no intention to resign. The stated practice of the defendant board in construing the return of an unsigned contract as a resignation should not be permitted to negate the clear import of the continuing contract law.

The note which Mrs. Brinson returned with the unsigned proposed contract speaks for itself, and is certainly not a clear declaration by the teacher which could lead to the mutual consent necessary, under the last sentence of K.S.A. 72-5411, to terminate the contract which had already arisen by operation of law. I cannot agree with the majority that ".  .  . there was substantial evidence of rescission by mutual assent  .  . ."

In short, I believe the district court properly exercised its limited function in this case and correctly held that the action of the school board, sitting first as a school board and later as a panel to review its own action, was not supported by *substantial competent evidence.* A modicum or a smidgen of evidence is not enough to support the decision of an obviously partial administrative body.

The district courts have the responsibility for the just and sound administration of the limited appellate function which they exercise in administrative appeals such as this. I find the district court's opinion factually just and legally sound. The principal reason for the appellate process and the primary objective of all Kansas courts is to insure that wherever the courts of Kansas sit, justice is dispensed to her people. I cannot see that the results reached in this case satisfy that aim.

PRAGER, J., joins in the foregoing dissenting opinion.