No. 49,209

GARY L. BOATRIGHT, *Appellee and Cross-Appellant*, v. THE BOARD OF TRUSTEES OF BUTLER COUNTY COMMUNITY JUNIOR COLLEGE, *Appellant and Cross-Appellee.*

(590 P.2d 1032)

Opinion filed February 24, 1979.

*James B. McKay, Jr.,* of McKay, McKay, and Hargrove, of El Dorado, argued the cause and was on the brief for the appellant and cross-appellee.

*E. L. "Lee" Kinch,* of Ratner, Mattox, Ratner, Ratner, and Barnes, P.A., of Wichita, argued the cause and was on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by a college teacher against the board of trustees of a community junior college to recover damages for breach of contract in failing to renew the teacher's contract of employment. Most of the facts are not in dispute and are as follows: The plaintiff-appellee, Gary L. Boatright, was hired by the defendant-appellant, Board of Trustees of Butler County Community Junior College, in the fall of 1965. Boatright was primarily responsible for the technical drafting program in the Division of Industrial Education. He also taught other courses from time to time during his tenure. His employment contract was renewed annually by the college until the conclusion of the 1974-75 college term, at which time his employment contract was not renewed.

In 1974, the college board of trustees and the education asso-

ciation, which was the bargaining agent for the teachers, negotiated a contract to govern the employment rights of the teachers. Included in the contract was a provision entitled, "Reduction in force due to economic conditions or elimination of a program." This provision, as a part of the terms and conditions of professional services between the board and its faculty, was in effect at the time of plaintiff's nonrenewal. The provision established the procedure to be followed by the board in the event of a reduction in the size of the faculty due to economic conditions or the elimination of a program. It stated in pertinent part:

"Reduction in force due to economic conditions or elimination of a program.
. . . .
"(4) The faculty member with least service at B.C.C.J.C. in the division in question shall be released first."

On February 12, 1975, the president of the college, Edwin J. Walbourn, addressed a letter to plaintiff notifying him that the technical drafting program was being eliminated and his contract would not be renewed. On February 20, 1975, plaintiff filed a formal grievance letter with the president pursuant to the established grievance procedure that was part of the negotiated contract between the board and the faculty association. The plaintiff challenged the nonrenewal of his employment contract on the basis that the board had violated paragraph (4) of the negotiated agreement. The basis of plaintiff's complaint was that he had ten years' seniority in the Division of Industrial Education and there were six instructors in the division who were junior in seniority to the plaintiff. The plaintiff's letter of grievance was referred by the president to Dean Wilson, the dean of instruction, for consideration. Dean Wilson filed a report with the president stating that the grievance had not been resolved. The matter was then referred to the Professional Ethics and Relations Committee (Welfare Committee) of the teachers association. The welfare committee found that plaintiff's grievance had merit and that, because of his tenure, the nonrenewal of his contract constituted a violation of paragraph (4) of the reduction in force provision discussed above. The welfare committee urged his reinstatement by the board of trustees as an instructor in the Division of Industrial Education. The matter was then referred to the board of trustees, which took the matter up on three separate occasions after seeking advice of legal counsel. The board offered to retain the plaintiff one more

year on his contract provided he agreed his contract was not to be renewed thereafter. Acceptance of this offer was conditional on the plaintiff's dropping his grievance. The plaintiff, by letter, rejected the board's offer. Thereafter, the president of the college notified the plaintiff that his contract was not to be renewed at the end of the 1975 term.

The plaintiff then brought this action to recover damages for breach of contract on the basis that he was denied his rights under paragraph (4) of the negotiated contract. The case proceeded to trial in district court in June of 1976, at which time both the plaintiff and the defendant board presented evidence. The primary issues litigated in the case were the construction of paragraph (4), and whether or not plaintiff's rights under paragraph (4) had been violated by the nonrenewal of his contract for the school year 1975-76. At the close of the trial, the district court dictated its findings of fact into the record. With respect to paragraph (4) of the negotiated contract, the trial court found specifically that the paragraph meant that the faculty member with the least seniority in the Division of Industrial Education should be released first and that plaintiff Boatright, because of his seniority, should have been retained and one of the other teachers in the division with less seniority should have been terminated. The trial court stated its desire to review the exhibits and testimony as to damages taken at the trial and then took the case under advisement for a later decision. Thereafter, the trial judge found that the plaintiff was entitled to recover damages for breach of his employment contract in the amount of $8,610 for lost wages plus $300 for expenses incurred by plaintiff in seeking other employment. Judgment was entered in accordance with the findings of the trial court. Neither side was satisfied with the trial court's decision. The defendant board appealed to this court claiming that the trial court erred in its construction of paragraph (4) of the negotiated contract and further contending that there was no substantial evidence to support the findings of the trial court that there was either a breach of contract or damages suffered by the plaintiff. The plaintiff, Boatright, filed a cross-appeal claiming that the damages allowed were wholly inadequate under the uncontradicted evidence.

On the appeal defendant board of trustees raises several points. It first contends that the board had the absolute right, within its

discretion, to terminate the plaintiff's employment at the end of any school year. The rationale of the board's position is that, as the board of trustees, it is responsible for the management and control of the college, including the right to determine the educational program of the college, and that it has an unbridled discretion to determine what teachers should be employed, the salaries to be paid them, and the terms of their employment. The thrust of the defendant's argument is that it has no binding contractual obligation to follow paragraph (4) of the negotiated agreement requiring it to terminate or release the faculty member with the least service at the college in a particular division where there is a reduction in force due to economic conditions or elimination of a program. We have no hesitancy in rejecting this contention. The collective negotiations law, K.S.A. 72-5413 *et seq.*, enacted in 1970, defines the term "board of education" to include the board of trustees of any community junior college of Kansas. See K.S.A. 72-5413(*b*). K.S.A. 72-5416 provides for negotiations between professional employees' organizations and boards of education. K.S.A. 72-5421 provides that a board of education and the negotiating representatives of the teachers may enter into an agreement covering terms and conditions of professional services and that such agreements become binding when ratified by the board and the teachers. In this case, as a matter of law, the contract negotiated between the defendant board and the teachers in 1974, including paragraph (4), was binding upon both parties.

The board next maintains that the trial court was in error in substituting its judgment for that of the board of trustees. It is the position of the board that the district court, in the breach of contract action, was restricted to determining whether, as a matter of law, the board had acted fraudulently, arbitrarily, or capriciously, and whether the decision of the board in not renewing the plaintiff's employment contract was supported by the evidence presented in the case. Simply stated, the board argues that the action in district court was nothing more nor less than an administrative appeal under K.S.A. 60-2101(*a*). The board relies on *Brinson v. School District*, 223 Kan. 465, 576 P.2d 602 (1978). In order to determine this issue, it is necessary to consider the grievance procedure provided for in the negotiated contract between the board of trustees and the teachers. In the event of a

dispute between a teacher and the board, the grievance procedure requires an attempt to resolve the grievance at three levels. Level one provides for an informal conference with the teacher's dean to give the dean the opportunity to resolve the grievance in an informal way. If the grievance is not resolved there, the next step is level two. At this level, the teacher may request the assistance of the teachers' welfare committee. The welfare committee prepares a formal written statement of the grievance and the matter is again submitted to the president of the college. If the grievance is still not resolved, the teacher must proceed to level three. At level three, the welfare committee of the teachers' association is required to make findings of fact and to adjudge the grievance on the basis of the findings. Based on the findings, the welfare committee is required to counsel the teacher either to accept the school's decision as indicated by the president or to appeal to the board of trustees. If the matter is still not resolved, the aggrieved teacher may request a hearing before the board of trustees. At the hearing, an effort is to be made to reach a mutually acceptable solution. *If not, the faculty reserves the right to proceed with legal action.* In another section of the negotiated contract between the board and the teachers, it is provided that, until such time as a "due process" law is enacted by the legislature, faculty members shall be protected by the provisions set forth in the Policies and Procedures Handbook.

It should be noted that at the time the dispute in this case arose, the due process procedure provided for in K.S.A. 1974 Supp. 72-5436 *et seq.*, was not applicable to community junior college teachers. They were brought under the act in 1975. The due process procedure, established by these statutes, provides for a hearing before an impartial hearing committee composed of appointees of the board and the teacher in the event of a dispute over a contract termination. There was no provision for an impartial hearing to be afforded the plaintiff at the time this dispute arose.

The grievance procedure in the negotiated contract did not provide for an evidentiary hearing before any impartial hearing body. The only procedure provided was for continuing negotiations which, it was hoped, would resolve the dispute. In the present case, plaintiff Boatright followed carefully the prescribed grievance procedure, which did not include an impartial admin-

istrative hearing as contemplated by *Brinson.* When the grievance of the teacher, Boatright, could not be resolved, he properly filed his action in the district court to recover damages for breach of his employment contract. In determining the action, the district court was required to hear the case de novo, weigh the evidence presented at the trial, and make its own independent findings of fact and conclusions of law. When plaintiff Boatright appeared in district court, this was the first opportunity he had been afforded to call witnesses and to present evidence in support of his position.

The defendant board's next point is that the trial court misconstrued paragraph (4) of the negotiated contract. It was the board's position that the technical drafting program, comprised of a group of courses offered within the Division of Industrial Education, was a "division" within the meaning of paragraph (4). According to the board, the word "division" should be construed to mean a particular instructor's program. The plaintiff's position was that the word "division" in paragraph (4) referred to one of the seven basic organizational divisions of the college. The trial court adopted the position of the plaintiff and there was substantial evidence to support the construction of the trial court. It was not disputed that there were seven divisions or general areas of instruction provided in the table of organization of the college. The divisions were the industrial, business, mathematics and science, fine arts, humanities, social science, and physical education divisions. Each of the divisions was assigned a *division chairman* who was in charge of the administration of the division. We further note that the Division of Industrial Education consisted of nine listed teachers, including the plaintiff, Gary Boatright. Faculty members who negotiated paragraph (4) testified at the trial that the use of the word "division" in the paragraph referred to one of the seven basic divisions of the college and it was not referring to a particular instructor's courses. The other primary factual issue determined at the trial was whether the plaintiff had been wrongfully terminated because he was not the faculty member with the least service in the division at the time his contract was not renewed. There was substantial evidence presented at the trial to show that other teachers in the industrial division with less seniority than the plaintiff should have been terminated before the plaintiff. On the entire record we have

concluded that there was substantial competent evidence to support the trial court's finding that the board breached paragraph (4) of the negotiated contract and, thus, plaintiff's contract of employment.

The board next raises a point that the plaintiff was barred from asserting a breach of contract because he declined to accept other job opportunities he could have taken and, instead, elected to pursue a doctorate degree at Oklahoma State University during the school year. The trial court reduced plaintiff's damages because of the benefit he gained in going back to college but held it did not completely bar the plaintiff from recovery. There is evidence to establish that the plaintiff made a diligent effort to find other employment after the nonrenewal of his contract at the community junior college and that he decided to return to Oklahoma State University in pursuit of his doctorate degree only after doing his best to find another position. We cannot say that the plaintiff waived his rights or was barred from asserting his claim against the defendant board of trustees for breach of contract.

The board next contends that the trial court erred in admitting into evidence exhibit 27, which was a handwritten list of the plaintiff's claimed expenses in traveling to different schools in search of work, and also a statement of farm losses incurred when plaintiff was compelled to leave the Butler County area. The plaintiff testified extensively about these items and he was fully cross-examined thereon by defendant's counsel. The trial court correctly observed that many of the claimed damages were speculative and remote. We find no error in the admission of this exhibit into evidence.

On the cross-appeal plaintiff Boatright maintains that the trial court erred in limiting his damages to one-half of his 1975-76 contract salary and the sum of $300 incurred in searching for new employment. The plaintiff mitigated some of his damages by attending Oklahoma State University, as noted above. Many of the items of damage claimed by the plaintiff were speculative and not within the contemplation of the parties at the time the contract was entered into. The trial court weighed all of the evidence presented and took into consideration the value of the plaintiff's continuing education at Oklahoma State University. It awarded plaintiff one-half a year's loss of wages and $300 in

expenses incurred in looking for other employment. There is substantial evidence to support the findings of the district court. For the reasons set forth above, we have concluded that the case should be affirmed on both the appeal and cross-appeal. This was essentially a fact case to be determined from the evidence presented by the parties. The findings of fact and conclusions of law of the trial court are in all respects supported by substantial evidence and must be upheld on appeal.

The judgment of the district court is affirmed.