No. 79,979

HAROLD REIFSCHNEIDER and JOYCE REIFSCHNEIDER, formerly known as JOYCE ELDRIDGE, *Appellants*, v. STATE OF KANSAS; THE KANSAS STATE LOTTERY; and GREGORY P. ZIEMAK, Executive Director of the Lottery Commission for the State of Kansas, *Appellees*.

(969 P.2d 875)

Opinion filed December 11, 1998.

*Thomas J. Berscheidt*, of Great Bend, argued the cause and was on the brief for appellants.

*Wm. Scott Hesse*, assistant attorney general, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellees.

The opinion of the court was delivered by

DAVIS, J.: Harold and Joyce Reifschneider appeal the dismissal of their action against the Kansas Lottery (Lottery) for one-half of the jackpot proceeds of a Kansas Cash Lotto game. The trial court ruled that an action under the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.*, was the Reifschneiders' only remedy and that their action had not been filed within 30 days as required by K.S.A. 77-613(b). Our jurisdiction is based on K.S.A. 20-3018(c).

The facts in this case are for the most part undisputed. On November 26, 1994, appellant Joyce Reifschneider, at the time known as Joyce Eldridge, purchased a Cash Lotto ticket with a winning combination of numbers. Another winning ticket with the same combination of numbers was sold in Wichita for the same game. Appellant Harold Reifschneider presented the ticket purchased by Joyce, along with a claim form, on November 28, 1994. Because another winning ticket had been sold, the Reifschneiders were paid $177,442, which represented one-half of the total jackpot. On November 22, 1995, the remaining winning ticket had still not been presented and the Reifschneiders, through counsel, sent a letter and a claim form seeking the unclaimed prize share. On April 17, 1996, the Executive Director of the Kansas Lottery through its attorney informed the Reifschneiders' counsel by letter that the Lottery was denying their claim.

On November 26, 1996, the Reifschneiders filed a petition in the district court of Shawnee County for breach of contract. They alleged that the Lottery had breached its obligation to pay the full amount of the jackpot. The Lottery filed a motion to dismiss, claiming among other things that the KJRA was the sole avenue of relief available to the Reifschneiders and that even if their petition could be construed as a petition for judicial review, it was untimely as it was filed in excess of the 30 days following the agency decision. The Lottery also argued that pursuant to applicable statutes and regulations, the Reifschneiders were only entitled to one-half of the jackpot, notwithstanding the fact that the other half went unclaimed.

The district court noted that the Reifschneiders' action was for breach of contract but determined that their sole avenue of relief was under the KJRA. The district court also determined that even if the Reifschneiders' petition could be construed as a petition for judicial review under the KJRA, it was untimely. Accordingly, the district court granted the Lottery's motion to dismiss.

In their appeal, the Reifschneiders contend that (1) an appealable order was not issued by the Kansas Lottery and (2) the letter denial by the Kansas Lottery of their claim denied them due process of law. As a part of this contention, they claim that the Kansas

Administrative Procedure Act (KAPA), K.S.A. 77-501 *et seq.*, applies or, at the very least, minimal requirements of notice and an opportunity for hearing are required before a valid order may be entered denying their interest in the claimed property.

## The Kansas Judicial Review Act

The trial court dismissed the Reifschneiders' action on two bases: (1) that it was filed as a contract action rather than one pursuant to the KJRA and (2) that even if it was to be treated as an action under the KJRA, it was untimely because it was not filed within 30 days of the issuance of the agency's final order. While the district court's first basis for dismissal is dispositive of this case on appeal, we need to address its additional conclusion that the Reifschneiders' claim, if considered a petition for review under the KJRA, was not timely filed.

The petition filed by the Reifschneiders on November 26, 1996, in the District Court of Shawnee County is a breach of contract action under Chapter 60 of the Kansas Code of Civil Procedure. The district court properly dismissed the Reifschneiders' petition on the basis that their sole remedy was an action under the KJRA, K.S.A. 77-601 *et seq.*

In *Fowles v. Kansas State Lottery*, 254 Kan. 557, 867 P.2d 357 (1994), Fowles alleged he purchased the winning ticket in a Kansas Cash Lotto drawing. The Kansas Lottery refused to pay Fowles the prize of $117,037 because he failed to produce the winning ticket. Fowles filed a breach of contract action against the Kansas Lottery. Among other conclusions, this court determined: "Plaintiff's sole action against the Lottery here is based on judicial review of an agency action under the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA) K.S.A. 77-601 *et seq.*; he may not maintain a separate action for breach of contract." 254 Kan. at 565.

Recently the Kansas Court of Appeals in a breach of contract action against Kansas State University relied upon our decision in *Fowles* in affirming the dismissal of the plaintiff's action for failure to state a claim for which relief could be granted. See *Douglas v. Kansas State University*, 22 Kan. App. 2d 171, 915 P.2d 782 (1996).

The court held that the KJRA was the exclusive remedy for the plaintiff: "The KJRA is the exclusive remedy for all requested relief which an agency can grant under its authority. Only actionable claims which fall outside the authority of an agency to grant can support a separate action by an aggrieved party." 22 Kan. App. 2d at 174.

The Reifschneiders' sole remedy for relief was an action under the KJRA. Their contractual action against the Lottery failed to state a claim for which relief could be granted and was properly dismissed by the district court.

The second basis for the district court's dismissal was that the Reifschneiders' contractual action, if considered as a petition for review under the KJRA, was not filed within 30 days of the Lottery's order as required under K.S.A. 77-613(b). The Reifschneiders argue the letter denial of their claim was not a final order and that the action of the Lottery denied them due process of law.

K.S.A. 77-613(b) requires that "a petition for judicial review of a *final order* shall be filed within 30 days *after service* of the order." (Emphasis added.) Two aspects of this statute are important. The first deals with the question of whether the letter denying the Reifschneider's claim is a final order. The second inquiry deals with "service of the order" under the facts of this case.

Under the KJRA, a final order is characterized and defined as "final agency action." K.S.A. 77-607(b)(1) and (2) provide:

"(1) 'Final agency action' means the whole or a part of any agency action other than nonfinal agency action;

"(2) 'Nonfinal agency action' means the whole or a part of an agency determination, investigation, proceeding, hearing, conference or other process that the agency intends or is reasonably believed to intend to be preliminary, preparatory, procedural or intermediate with regard to subsequent agency action of that agency or another agency."

Based upon the above definitions and the facts of this case, there is no question that the letter denial of the Reifschneiders' claim to the other one-half of the jackpot proceeds of the Cash Lotto game was a final agency action within the meaning of K.S.A. 77-607(b)(1). The letter denial which is part of our record on appeal finally and completely resolves the Reifschneiders' claim.

However, there is a problem with service of the final order on the Reifschneiders. K.S.A. 77-613(e) states in pertinent part:

"*Service of an order*, pleading or other matter shall be made upon *the parties to the agency proceeding and their attorneys of record*, if any, by delivering a copy of it to them or by mailing a copy of it to them at their last known addresses. . . . Unless reconsideration is a prerequisite for seeking judicial review, *a final order shall state the agency officer to receive service of a petition for judicial review on behalf of the agency*." (Emphasis added.)

The letter sent by the Lottery denying the Reifschneiders' claim was addressed to and sent to their attorney and no copy was sent to the Reifschneiders themselves. K.S.A. 77-613(e) requires that an agency order be sent to both the parties and their attorneys as evidenced by the use of the phrase "by delivering a copy of it to *them* or by mailing a copy of it to *them* at *their* last known *addresses*." (Emphasis added.) Moreover, the letter denial by the Lottery did not "state the agency officer to receive service of a petition for judicial review on behalf of the agency" as required by K.S.A. 77-613(e).

The notice provisions of K.S.A. 77-613(e) require strict compliance. Recently the Kansas Court of Appeals addressed this same issue in *Claus v. Kansas Dept. of Revenue*, 16 Kan. App. 2d 12, 13, 825 P.2d 172 (1991). The Court of Appeals concluded that unlike the provision in Chapter 60 relating to substantial compliance, Chapter 77 contained no such provisions and therefore required strict compliance. 16 Kan. App. 2d at 13. The Court of Appeals relied on our decision in *Pork Motel, Corp. v. Kansas Dept. of Health & Environment*, 234 Kan. 374, 390, 673 P.2d 1126 (1983), wherein we stated that because Chapter 20 did not provide for substantial compliance of service in the same manner as Chapter 60, there must be strict compliance with its service requirements.

The Court of Appeals' decision in *Claus* regarding strict construction is sound. K.S.A. 77-613(e) contemplates that a state agency's final action may affect unrepresented parties and thus requires that the order be sent to the parties and their counsel, *if any*. In order that appellate rights may be preserved, K.S.A. 77-613(e) further mandates that the final order state the agency officer to receive service of a petition for judicial review on behalf of the

agency. The 30-day period for filing a petition for judicial review under the provisions of K.S.A. 77-613(b) begins to run "after service of the order" by the agency in compliance with the notice requirements in K.S.A. 77-613(e).

In this case, the letter sent by the Lottery to the Reifschneiders' counsel did not comply with K.S.A. 77-613(e). The 30-day period of time provided by K.S.A. 77-613(b) for the Reifschneiders to file a petition for judicial review under the KJRA has not elapsed, for the Lottery failed to serve its final agency action on the Reifschneiders according to the express provisions of K.S.A. 77-613(e). Thus, while the trial court was correct in dismissing the Reifschneider's contractual action, the second reason asserted by the district court for dismissal, *viz*, that the time for filing a petition for review under K.S.A. 77-613(b) had elapsed, was incorrect. The 30-day period begins only "after service of the order." K.S.A. 77-613(b) and (e).

Affirmed.

DAVIS, J., concurring: According to the majority opinion, the claim of the Reifschneiders remains open for judicial review under the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq*. While not required by law, the Reifschneiders thus may still seek reconsideration of the Lottery's final agency action. Because the Reifschneiders have raised a due process argument in their brief, and the Lottery has responded to the argument, I would elect to resolve the question.

The Reifschneiders contend that their due process rights are guaranteed under the Kansas Administrative Procedures Act (KAPA), K.S.A. 77-501 *et seq*. However, the KAPA applies "only to the extent that other statutes expressly provide that the provisions of this act govern proceedings under those statutes." K.S.A. 77-503. Nothing in the Kansas Lottery Act, K.S.A. 74-8701 *et seq.*, expressly provides that the KAPA governs proceedings regarding the Lottery. Therefore, by its own terms, the KAPA does not apply.

In the alternative, the Reifschneiders argue that the procedure employed by the Lottery in this case did not afford them due process. The Reifschneiders complain that without notice and an opportunity for a hearing such as that permitted under the KAPA,

they would have no opportunity to develop a record that the district court could review under the KJRA and would have no access to the agency's records in order to discover whether the agency's allegations are true. I believe their point is well taken. The Lottery denied their claim by letter. The Reifschneiders had no notice or opportunity for a hearing prior to the final agency action.

As a general rule, due process trial requirements are applicable to actions which are quasi-judicial in nature while such trial-type requirements are not applicable to quasi-legislative actions or purely executive acts. See Ryan, Kansas Administrative Law With Federal References § 7.03 (3d. ed. 1991). An often used example of a quasi-judicial proceeding requiring a full hearing may be found in *Rydd v. State Board of Health*, 202 Kan. 721, 726, 451 P.2d 239 (1969). In *Rydd*, an applicant was denied a license to operate a day care due to her individual fitness and character. We stated that the procedure was adjudicative in nature and, thus, required a hearing because "[t]he license was denied because of particular facts pertaining to the appellee—the kind of facts which normally ought not to be found without allowing the party a chance to rebut, explain and cross-examine." 202 Kan. at 726.

Conversely, in *Kansas Racing Management, Inc. v. Kansas Racing Comm'n*, 244 Kan. 343, 770 P.2d 423 (1989), we found no due process hearing required where an applicant was denied a racing license. In reaching this decision, we noted that under the pertinent statutes, the Kansas Racing Commission had the broad discretion to grant or deny a license to any or all applicants even if the applicants had complied with the statutory requirements. 244 Kan. at 355. Thus, the plaintiff in that case had no protected property interest in receiving a license, unlike the situation in *Rydd*. 244 Kan. at 358. Concerning the necessity of a protected interest in life, liberty, or property for due process to apply, we stated:

"When an interest involving life, liberty, or property is implicated, due process considerations apply. However, a protected due process right must encompass an interest recognized by the Constitution. [Citations omitted.] To prevail on their due process claim, appellants must show that they possess a definite liberty or property interest and that this interest was abridged, under color of state law, without appropriate process. [Citation omitted.]

"To establish a property interest in a particular benefit, appellant must have a 'legitimate claim of entitlement to it.' [Citation omitted.] A person's interest in a benefit becomes a property interest for due process purposes if there are 'rules or mutually explicit understandings' that support the claim of entitlement to the benefit and that the person may invoke at a hearing. [Citation omitted.]" 244 Kan. at 354.

The question, therefore, is whether the Reifschneiders have a protected property interest in the remaining proceeds of the jackpot based upon possession of the winning lottery ticket. The Reifschneiders allege that they have complied with the law by presenting the only winning ticket for the Kansas Cash Lotto game. If they are correct in their statutory interpretation, then they are entitled to the disputed share of the prize money. This is not a case, as in *Kansas Racing Management*, where the administrative agency has the discretion over the award of prize money. Rather, the situation is similar to that in *Rydd*, where once the statute has been complied with, the award is mandatory. The final agency action is not a discretionary act. I would conclude that the Reifschneiders have established a sufficient property right in the prize share which may not be infringed upon without due process of law. See *Rydd*, 202 Kan. at 729-30.

The determination made by the Lottery in this case is an adjudication concerning the rights of the plaintiffs to approximately $177,000, representing one-half of the proceeds of a Kansas Lottery game. Without deciding or reaching the merits of the Reifschneiders' claim and the Lottery's basis for denial of that claim, I would conclude that the Reifschneiders are entitled to the minimum procedural requirement of due process. The letter decision of the Lottery in this case was adjudicatory in nature. Adjudicatory actions are defined as actions that "culminate in final determination affecting personal or property rights." Black's Law Dictionary 42 (6th ed. 1990). Before such rights may be affected, a hearing must be made available. Black's defines an adjudicatory hearing as "[a] proceeding before an administrative agency in which the rights and duties of particular persons are adjudicated after notice and opportunity to be heard." Black's Law Dictionary 42.

The fact that the Kansas Lottery was not made subject to the KAPA does not in my mind signal an intent by the legislature that the Lottery may disregard procedural due process when deciding questions affecting property rights. It does indicate to me that all the formality required in a hearing under the KAPA may not be required in a proceeding before the Kansas Lottery. In most instances, the issue raised before the Lottery will be a question of law. In such cases, due process may be satisfied with notice and an opportunity for the affected party to present his or her legal position to the Executive Director of the Kansas Lottery. Obviously, more would be required if a disputed question of fact were involved.

It is not entirely clear from the record in this case whether there is a disputed question of fact. It appears that the main issue is a question of law involving statutory interpretation: whether a holder of a winning ticket who has received one-half of the prize may claim the other half when the second winning ticket is not redeemed within the given time period. However, there may also be a factual dispute as to whether a second winning ticket was actually sold. The issues raised by the Reifschneiders in this case would determine what process is due. At a minimum, I would conclude that they are entitled to notice with an opportunity for a hearing before the Executive Director of the Kansas Lottery.