No. 83,972

HAROLD REIFSCHNEIDER, *Appellant,* v. STATE OF KANSAS; THE KANSAS STATE LOTTERY; and GREGORY P. ZIEMAK, EXECUTIVE DIRECTOR OF THE LOTTERY COMMISSION FOR THE STATE OF KANSAS, *Appellees.*

(17 P.3d 907)

Opinion filed January 26, 2001.

*Thomas J. Berscheidt*, of Great Bend, argued the cause and was on the brief for appellant.

*Wm. Scott Hesse*, assistant attorney general, argued the cause, and *Carla J. Stovall*, attorney general, was on the brief with him for appellees.

The opinion of the court was delivered by

LARSON, J.: This is the second appeal of an attempt by Harold Reifschneider to claim the entire amount of the November 26, 1994, cash lotto jackpot for which he held one of two winning lottery tickets.

The factual scenario and proceedings in the previous appeal, *Reifschneider v. Kansas State Lottery*, 266 Kan. 338, 969 P.2d 875 (1998) (*Reifschneider I*), were set forth as follows:

"On November 26, 1994, appellant Joyce Reifschneider, at the time known as Joyce Eldridge, purchased a Cash Lotto ticket with a winning combination of numbers. Another winning ticket with the same combination of numbers was sold in Wichita for the same game. Appellant Harold Reifschneider presented the ticket purchased by Joyce, along with a claim form, on November 28, 1994. Because another winning ticket had been sold, the Reifschneiders were paid $177,442, which represented one-half of the total jackpot. On November 22, 1995, the remaining winning ticket had still not been presented and the Reifschneiders, through counsel, sent a letter and a claim form seeking the unclaimed prize share. On April 17, 1996, the Executive Director of the Kansas Lottery through its attorney informed the Reifschneiders' counsel by letter that the Lottery was denying their claim.

"On November 26, 1996, the Reifschneiders filed a petition in the district court of Shawnee County for breach of contract. They alleged that the Lottery had breached its obligation to pay the full amount of the jackpot. The Lottery filed a motion to dismiss, claiming among other things that the KJRA [Kansas Act for Judicial Review and Civil Enforcement of Agency Actions Act] was the sole avenue of relief available to the Reifschneiders and that even if their petition could be construed as a petition for judicial review, it was untimely as it was filed in excess of the 30 days following the agency decision. The Lottery also argued that pursuant to applicable statutes and regulations, the Reifschneiders were only entitled to one-half of the jackpot, notwithstanding the fact that the other half went unclaimed.

"The district court noted that the Reifschneiders' action was for breach of contract but determined that their sole avenue of relief was under the KJRA. The district court also determined that even if the Reifschneiders' petition could be construed as a petition for judicial review under the KJRA, it was untimely. Accordingly, the district court granted the Lottery's motion to dismiss.

"In their appeal, the Reifschneiders contend that (1) an appealable order was not issued by the Kansas Lottery and (2) the letter denial by the Kansas Lottery of their claim denied them due process of law. As a part of this contention, they claim that the Kansas Administrative Procedure Act (KAPA), K.S.A. 77-501 *et seq.*, applies or, at the very least, minimal requirements of notice and an opportunity for hearing are required before a valid order may be entered denying their interest in the claimed property." 266 Kan. at 339-40.

We held in *Reifschneider I* that (1) the sole action for a person aggrieved by a decision of the Executive Director of the Kansas Lottery (Lottery) is an action under the Kansas Act for Judicial

Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.*, but (2) the letter sent to Reifschneider's counsel did not strictly comply with the notice provisions of K.S.A. 77-613(e) because it was not also sent to Reifschneider. The letter also failed to state the agency officer who was to receive service of a petition for judicial review on behalf of the agency. Consequently, the 30-day period within which a petition for review was required to be filed would begin only after proper service of the final order of the agency. 266 Kan. at 341-43.

Eleven days after our opinion in *Reifschneider I* was filed, the former Executive Director of the Lottery notified Reifschneider and his counsel by letter of his final order denying Reifschneider's claim in the following manner:

"You presented a claim for the $354,884 jackpot for the Cash Lotto drawing on November 26, 1994, and were advised that yours was one of two tickets bearing the winning combination of numbers. In accordance with rules and regulations adopted by the Kansas Lottery Commission, the Kansas Lottery paid your claim in the sum of $177,442, representing one-half of the jackpot prize. No claim was ever presented for the other ticket bearing the same winning combination of numbers, which was sold by the Quik-Trip store, 2838 West Central, Wichita, Kansas. Your claim for the other half of the winning jackpot, since the other ticket containing the winning combination of numbers was never claimed, was presented to me for review and consideration. Based upon the limitations imposed by the *Kansas Lottery Act* and by administrative rules and regulations, I directed Assistant Attorney General Carl M. Anderson to deny your claim for the unclaimed prize, representing the other one-half of the Cash Lotto jackpot. This was done in the form of a letter to your attorney, Thomas Berscheidt, on April 17, 1996. Your claim was denied in that letter, and at this time, for the following reasons:

"Subsection (d) of K.A.R. 111-7-5 of the Cash Lotto game rules provides that 'the prize money allocated to the jackpot prize category for matching six (6) of six (6) shall be divided equally by the number of game boards winning a jackpot prize.' In this case, there were two game boards bearing winning combinations of numbers, the one submitted by you and the one issued at 11:49 a.m. on November 26, 1994, by the QuikTrip store in Wichita.

"An on-line generic rule applicable to all on-lines games, including Cash Lotto, provides at subsection (e) of K.A.R. 111-6-5 addressing the payment of prizes that, 'all prizes must be claimed within 365 days including the first day of the game or the drawing on which the prize was won . . . . Any prizes not claimed within the specific period shall be added to the prize pools of subsection Kansas lottery games.'

"The *Kansas Lottery Act*, at subsection (f) of K.S.A. 74-8720 provides that 'Unclaimed prize money not payable directly by lottery retailers shall be retained for the period established by rules and regulations, and if no claim is made within such period, then such unclaimed prize money shall be added to the prize pools of subsequent lottery games.' Since the rules require that the Cash Lotto jackpot prize be divided equally by the number of game boards winning a jackpot prize, and only one valid claim was presented, the balance would be considered an unclaimed prize and treated as required by statute and the administrative rules and regulations adopted by the Kansas Lottery.

"The denial of your claim for the unclaimed $177,442 represents final agency action by the Kansas Lottery. You may seek judicial review of this action by the Kansas Lottery by filing a petition for judicial review within 30 days after service of this letter which represents a final order with reference to your claim. In the event you wish to seek judicial review on the subject matter addressed here, you should serve such a petition for judicial review upon me as Executive Director for the Kansas Lottery."

Reifschneider timely filed a petition for review of this order under the KJRA. The Lottery's answer denied Reifschneider's claim to the prize because he did not produce a winning ticket for the second portion of the prize. The Lottery also contended he had been paid in full, that the State was discharged from liability upon payment of the prize pursuant to K.A.R. 111-6- 14 (7 Kan. Reg. 216 [1988]), release, accord and satisfaction, and a general denial.

In Reifschneider's initial memorandum brief, among other arguments, he contended that the Lottery had no evidence, "substantial or otherwise," to even establish that another winning ticket was in fact sold.

The Lottery, in obvious response to this allegation, in its reply brief, argued that we had held in *Reifschneider I* that the Kansas Administrative Procedure Act (KAPA), K.S.A. 77-501 *et seq.*, does not apply to the Kansas Lottery. The Lottery now argues K.S.A. 77-619 allows receipt of additional evidence by a court during the course of an appeal from an administrative decision. The lottery proffered evidence of the existence of a second winning lottery ticket for the November 26, 1994, drawing through the affidavit of its Executive Director with attached business records in the form of computer documentation.

The records showed the time, date, and location of the winning tickets as well as the numbers selected on the winning game boards

(05, 06, 16, 23, 26, and 32). The records showed that at 11:49:06 a.m. an unknown person purchased winning lottery ticket number 16421313 at terminal 228 at a QuikTrip convenience store in Wichita, Kansas. It further showed that at 1:17:35 p.m. Reifschneider purchased a winning lottery ticket number 11370729 from terminal 659 at the Schaffer Standard in LaCrosse, Kansas.

The Lottery further argued in its brief that Reifschneider, by accepting payment of $177,442, had discharged the Lottery from further liability, that the decision of the Executive Director of the Lottery was entitled to great deference, that unclaimed prize money is required to be placed in subsequent prize pools by K.S.A. 74-8720(f), and that substantial competent evidence showed the sale of two winning lottery tickets with one being unclaimed.

Reifschneider specifically objected to the Lottery's proffer and contended he was being denied the opportunity of challenging all or part of the proffered exhibits. He failed, however, in any manner to counter the evidence submitted or show how it was in error. He argued that by insisting it is not governed by the KAPA, the Lottery chose for there to be no agency record under K.S.A. 77-619(a). He claimed no additional evidence was necessary to determine the basic issue in the appeal, which he framed as follows:

"The only issue to be considered herein is whether a second winning ticket, allegedly sold but not presented for the available prize permits the Respondent to conclude that the remaining portion of the total prize should be returned to the prize pool. If for the sake of argument it is conceded that ten tickets were sold with the same winning combination of numbers and the Petitioner was the only one to present the 'actual ticket' within 365 days of the drawing, the same issue would remain. Petitioner is the only person who possesses a validated 'winning ticket'. A 'winning ticket' properly submitted is the only way to claim a prize, according to the Respondent's own regulations [K.A.R. 111-7-5(g)]."

With this record and based upon these arguments, the trial court made findings of fact that two tickets with a winning combination of numbers had been sold. Reifschneider's ticket was presented. The second ticket was never presented. Reifschneider had been paid one-half of the jackpot amount and later presented a claim to the Lottery seeking the unclaimed prize share allotted to the other

winning ticket, which was denied by a final order issued by the Executive Director of the Lottery.

The trial court's conclusions of law stated the Lottery's actions were subject to the KJRA, specifically K.S.A. 77-621(a)(1), which states that "the burden of proving the invalidity of agency action is on the party asserting invalidity," and placing the burden on Reifschneider to prove the Lottery erred in its interpretation of the law and factual conclusions, contrary to K.S.A. 77-621(c)(4) and (7).

A statement in the concurring opinion of *Reifschneider I* was relied on by the trial court for a holding that the Lottery is not subject to the KAPA. But, the trial court relied on K.S.A. 77-620 to hold an agency record consists of documents reflecting the agency action, which was shown by the Executive Director's letter to Reifschneider dated December 22, 1998.

The trial court further held that this agency record could be supplemented by additional evidence in the form of computer records submitted pursuant to K.S.A. 77-619(a) showing the sale of the two winning lottery tickets. The court found "the Kansas Lottery's determination that there was a second winning ticket, number 16421313, is a finding of fact supported by substantial evidence in the form of computer documentation of the second prize winning ticket."

The trial court then held that a specialized agency's interpretation of a statute it has the duty to implement should be entitled to great deference if the agency's interpretation is supported by a rational basis, citing *State Dept. of Administration v. Public Employees Relations Bd.*, 257 Kan. 275, 281, 894 P.2d 777 (1995).

The issue of law that the trial court stated it was required to resolve is whether the holder of one of two winning lottery tickets, who has been paid one-half of the prize, has a right to the other half if it is not claimed within the prescribed time period. This issue requires construction of the statutes and agency regulations.

K.A.R. 111-7-5(d) (7 Kan. Reg. 1192-93 [1988]) states: "The prize money allocated to the jackpot prize category for matching six (6) of six (6) shall be divided equally by the number of game boards winning a jackpot prize." A game board is defined in K.A.R. 111-7-2(d) (7 Kan. Reg. 1192 [1988]) as "that area of the play slip

which contains thirty-three (33) squares, numbered one (01) through thirty-three (33)."

The trial court looked to the provision of the Kansas Lottery Act at K.S.A. 74-8720(f) that states: "Unclaimed prize money not payable directly by lottery retailers shall be retained for the period established by rules and regulations and if no claim is made within such period, then such unclaimed prize money shall be added to the prize pools of subsequent lottery games." K.A.R. 111-6-5(e) (7 Kan. Reg. 214-15 [1988]) provides prizes must be claimed within 365 days and restates the requirement of adding unclaimed prizes to the prize pools of subsequent Kansas lottery games.

This led the trial court to the question: "Is a winner's entitlement determined by the number of tickets sold or the number of tickets presented to the lottery?" Reifschneider contends the lottery would need ticket number 16421313 to prove the existence of the other winning ticket. The trial court quoted K.A.R. 111-7-5(g): "A validated ticket shall be the only proof of a game play or plays, and the submission of a winning ticket to and receipt of the ticket by the Lottery or its authorized retailer shall be the *sole method of claiming a prize.*" This regulation relates only to the process of claiming a lottery prize and applies to the players, not to the Lottery.

The trial court held K.A.R. 111-7-5(g) does not mean the Lottery has to be in possession of the actual winning lottery tickets in order to establish their existence, which is shown by the Lottery's computer records that show the time, date, and location where winning tickets are sold and the number selected. In this case the computer records show the existence of two winning lottery tickets sold on November 26, 1994.

The trial court found the Executive Director acted within the provisions of K.A.R. 111-7- 5(d) and K.S.A. 74-8720(c) in paying Reifschneider one-half of the jackpot prize and that the default of the owner of the other winning ticket does not entitle him to the entire jackpot. The court specifically held: "The amount of the prize is determined by the number of tickets sold and not by the number of tickets presented." The trial court concluded:

"This Court finds that the Petitioner has not met his burden of proving the invalidity of the Kansas Lottery's action. The Kansas Lottery has not erroneously interpreted or applied the law. Further, the Lottery's action is supported by substantial evidence and is not unreasonable, arbitrary, or capricious."

The decision of the Lottery was affirmed.

Reifschneider appeals.

He contends the final order issued by the Lottery is a clear denial of due process, that the trial court's decision is contrary to law and the rules and regulations applicable to the Lottery, and finally that he is entitled to interest on the unpaid portion of the cash lottery prize.

The scope of review of an administrative agency under the KJRA is defined in K.S.A. 77- 621, which provides in applicable part:

"(a) . . . .
(1) The burden of proving the invalidity of agency action is on the party asserting invalidity; and

. . . .
"(c) The court shall grant relief only if it determines any one or more of the following:

. . . .
(4) the agency has erroneously interpreted or applied the law;

. . . .
(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act."

We have further held:

"The interpretation of a statute by an administrative agency charged with the responsibility of enforcing a statute is entitled to judicial deference and is called the doctrine of operative construction. Deference to an agency's interpretation is particularly appropriate when the agency is one of special competence and experience. Although an appellate court gives deference to the agency's interpretation of a statute, the final construction of a statute lies with the appellate court, and the agency's interpretation, while persuasive, is not binding on the court. Interpretation of a statute is a question of law over which an appellate court's review is unlimited." *In re Appeal of United Teleservices, Inc.*, 267 Kan. 570, 572, 983 P.2d 250 (1999).

"An [administrative] agency's interpretation of its own regulation will not be disturbed unless the interpretation is clearly erroneous or inconsistent with the regulation." *Murphy v. Nelson*, 260 Kan. 589, 595, 921 P.2d 1225 (1996).

In first considering Reifschneider's contention that he has been denied due process, we point out that while it was not so held in the majority opinion in *Reifschneider I*, we agree with that portion of the concurring opinion therein that states:

"The Reifschneiders contend that their due process rights are guaranteed under the Kansas Administrative Procedure Act (KAPA), K.S.A. 77-501 *et seq*. However, the KAPA applies 'only to the extent that other statutes expressly provide that the provisions of this act govern proceedings under those statutes.' K.S.A. 77-503. Nothing in the Kansas Lottery Act, K.S.A. 74- 8701 *et seq.*, expressly provides that the KAPA governs proceedings regarding the Lottery. Therefore, by its own terms, the KAPA does not apply." 266 Kan. at 343 (Davis, J., concurring).

With the various hearing requirements of the KAPA not implemented, we next consider if the trial court's actions in considering the Lottery's business records under a K.S.A. 77-619(a) submission require reversal herein and a full and complete hearing before the Lottery's Executive Director. We hold that under the limited and restrictive facts of this particular case, it does not.

While Reifschneider now appears to claim that only one winning ticket has been sold, that was not the argument he presented to the Lottery when he filed his claim for the additional unclaimed portion of the November 26, 1994, jackpot. He did not contend that his ticket was the only one sold with the winning number combination, but rather he argued that under the laws and regulations governing the Lottery, he was legally entitled to the money irrespective of whether a second ticket existed as long as the second ticket was never claimed.

We generally hold that a party cannot raise an issue to the district court which has not been raised at the administrative level, *U.S.D. No. 500 v. Womack*, 20 Kan. App. 2d 608, 611, 890 P.2d 1233 (1995), and it is also clear that none of the exceptions to that rule found in K.S.A. 77-617(a), (b), (c), or (d) apply to this case. In addition, Reifschneider presented no valid reason in his objection to the Lottery's proffer to require a hearing and offered no evi-

dence that would question the Lottery's records or show they were unreliable or erroneous.

It has been clear throughout these proceedings that Reifschneider's sole claim before the Lottery is a legal issue rather than a claim that his ticket was the only winning ticket sold. In his objection to the Lottery's brief, which is previously in this opinion set forth in full, he candidly states: "The only issue to be considered herein is whether a second winning ticket, allegedly sold but not presented for the available prize permits the Respondent to conclude that the remaining portion of the total prize should be returned to the prize pool." This is the sole issue that is raised, and as such it does not matter whether the trial court properly admitted the additional documents. We need not address the issue further and turn to the legal issue which is determinative of this case.

Reifschneider argues the district court erred in upholding the Lottery's decision. He contends that under the statutes and regulations governing the Lottery with regard to unclaimed prize money, he should be awarded the unclaimed half of the disputed jackpot.

We have previously set forth the standard of review and the deference which we give to agency interpretations, although such interpretations while persuasive, are not binding upon us.

K.S.A. 74-8720 is the only applicable statute concerning lottery prizes. It states, in pertinent part:

"(b) The prize to be paid or awarded for each winning ticket or share shall be paid to one natural person who is adjudged by the executive director, the director's designee or the retailer paying the prize, to be the holder of such winning ticket or share, or the person designated in writing by the holder of the winning ticket or share on a form satisfactory to the executive director, except that the prize of a deceased winner shall be paid to the duly appointed representative of the estate of such winner or to such other person or persons appearing to be legally entitled thereto.

"(c) The executive director shall award the designated prize to the holder of the ticket or share upon the validation of a claim or confirmation of a winning share. The executive director shall have the authority to make payment for prizes by any means deemed appropriate upon the validation of winning tickets or shares."

K.S.A. 74-8720(f) provides that unclaimed prize money "shall be retained for the period established by rules and regulations and if

no claim is made within such period, then such unclaimed prize money shall be added to the prize pools of subsequent lottery games."

In enacting K.S.A. 74-8720, the legislature gave the Executive Director of the Lottery or his or her designee the sole authority to determine who is a holder of a winning ticket. *Fowles v. Kansas State Lottery*, 254 Kan. 557, 563, 867 P.2d 357 (1994). Of course, this authority is limited by the Kansas statutes and by the administrative regulations promulgated by the Lottery. See *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, Syl. ¶ 2, 691 P.2d 1303 (1984) (stating that an administrative agency may not substitute its judgment for that of the legislature); *Tew v. Topeka Police & Fire Civ. Serv. Comm'n*, 237 Kan. 96, 100, 697 P.2d 1279 (1985) (stating that generally an agency may not disregard its own rules and regulations).

K.S.A. 74-8720 does not speak directly to the controversy at issue here. Therefore, it is necessary to examine the administrative regulations promulgated by the Lottery. K.S.A. 74-8710 authorizes the Kansas Lottery Commission to adopt rules and regulations governing the operation of the lottery, including the manner of selecting the winning tickets or shares and the manner of payment of prizes to the holders of winning tickets or shares. See K.S.A. 1999 Supp. 74-8710(a)(2) and (3).

K.A.R. 111-7-5 (9 Kan. Reg. 986 [1990]), is one of the regulations governing Cash Lotto games such as the one in which Reifschneider participated. It provides: "The prize money allocated to the jackpot prize category for matching six (6) of six (6) shall be divided equally by the number of game boards winning a jackpot prize." K.A.R. 111-7-5(d). While this regulation provides that the prize money be divided among winning game boards, it does not answer the question of whether the tickets, in order to be classified as "winning game boards," must be claimed or merely must be sold.

Reifschneider argues that in order to qualify, the tickets must be claimed, pointing to K.A.R. 111-7-3(c) (11 Kan. Reg. 1796 [1992]), which states: "A validated ticket shall be the only proof of a game play or plays, and the submission of a winning ticket to and

receipt of the ticket by the Lottery or its authorized retailer shall be the sole method of claiming a prize or prizes." The fallacy of this argument is that this regulation is directed towards the steps necessary to claim a prize rather than addressing the question of whether the prize should be divided. See *Fowles*, 254 Kan. at 560-61.

The Lottery argues that it was precluded from paying the remainder of the jackpot to Reifschneider because he did not meet the validation requirements set forth in K.A.R. 111-6-7 (11 Kan. Reg. 1477 [1992]). As part of the requirements for a valid ticket, K.A.R. 111-6-7(a)(7) requires that the ticket not have been previously paid. The Lottery contends that because it previously paid Reifschneider one-half of the jackpot, the ticket had been previously paid. This is disingenuous, however, as it is clear that this regulation addresses situations where a ticket is presented twice in hopes of obtaining a double recovery rather than the situation at issue here. The same may be said of the Lottery's assertion that it cannot pay Reifschneider the remaining part of the jackpot because he no longer has a winning ticket.

Nothing in the administrative regulations promulgated by the Kansas Lottery exactly addresses this situation. The Lottery's decision denying Reifschneider's claim was based on its interpretation of K.S.A. 74-8720(f), K.A.R. 111-7-5 (9 Kan. Reg. 986 [1990]), and K.A.R. 111- 6-5 (7 Kan. Reg. 214 [1988]), which is a valid interpretation of the language. Under our standard of review, the Lottery's interpretation of its regulations was neither clearly erroneous nor inconsistent with the regulations. See *Murphy v. Nelson*, 260 Kan. at 595. We agree with the ruling of the Lottery and with the analysis of the district court which is previously set forth herein.

We defer to the Lottery's interpretation and hold that where two or more tickets bearing the same winning number combination are sold, the jackpot is to be split between those tickets, even in cases where one or more of the tickets go unclaimed. The trial court was correct in upholding the Lottery's determination that Reifschneider is not entitled to the remaining $177,442 in the jackpot. In accordance with K.S.A. 74-8720(f), the unclaimed prize money

held by the Lottery is to be added to the prize pools of subsequent lottery games.

Affirmed.

DAVIS, J., dissenting: In my concurring opinion in *Reifschneider I*, I addressed the question of due process and concluded that at the very minimum, in order to insure the due process rights of Reifschneider, he should be entitled to notice and an opportunity for a hearing before the Executive Director of the Kansas Lottery. The majority opinion does not deal with due process considerations based on its determination that Reifschneider's sole argument throughout this case involves only a question of law. While it may be true that the central question in this appeal is a question involving the interpretation of statutory and regulatory law, it is also clear that Reifschneider, in his amended petition for judicial review, argued that there was "not substantial evidence" that a second ticket had been sold.

The district court admitted the affidavit of Gregory Ziemak, former Executive Director of the Lottery, as well as a large volume of computer printouts which purported to show that two winning tickets had indeed been sold for the drawing at issue as additional evidence under K.S.A. 77-619(a), and then relied on this evidence to resolve the factual question as to whether two winning tickets were sold. Reifschneider argues that these printouts and the affidavit should not have been considered by the court because they did not properly constitute additional evidence under K.S.A. 77-619(a) and they were admitted without allowing cross-examination. I agree with both arguments and respectfully dissent from the majority opinion. Although I agree with the majority's interpretation of the governing law and regulations, I would reverse the trial court and remand for further proceedings either before the trial court or before the Executive Director.

K.S.A. 77-618 provides that "[j]udicial review of disputed issues of fact shall be confined to the agency record for judicial review as supplemented by additional evidence taken pursuant to this act." The additional evidence in this case was admitted under K.S.A. 77-619(a), which severely limits any additional evidence to only that

needed to decide disputed issues regarding the "[i]mproper constitution as a decision making body; or improper motive or grounds for disqualification, of those taking agency action" or "unlawfulness of procedure or of decision-making process." In my opinion, the additional evidence in the form of computer printouts and the affidavit admitted fail to satisfy the limitations of K.S.A. 77-619(a).

K.S.A. 77-619(b) provides a method which, had it been used by the trial court in this case, would have satisfied due process rights of all parties. This provision allows the trial court to remand the matter to the agency with directions that the agency conduct fact-finding and other proceedings the court considers necessary under certain conditions. These conditions exist where

"(1) [t]he agency was required to base its action exclusively on a record of a type reasonably suitable for judicial review, but the agency failed to prepare or preserve an adequate record;

"(2) the court finds that (A) new evidence has become available that relates to the validity of the agency action at the time it was taken, that one or more of the parties did not know and was under no duty to discover, or did not know and was under a duty to discover but could not reasonably have discovered until after the agency action, and (B) the interests of justice would be served by remand to the agency;

"(3) the agency improperly excluded or omitted evidence from the record; or

"(4) a relevant provision of law changed after the agency action and the court determines that the new provision may control the outcome." K.S.A. 77-619(b).

Thus, where the agency record is not developed in a manner sufficient to permit review, the trial court has the option of remanding to the agency with directions to conduct fact-finding.

In any event, the admission of additional evidence by the trial court denied Reifschneider due process of law in that such evidence was not subject to cross-examination. We have recognized that the right to cross-examination in quasi-judicial or adjudicatory proceedings is an important requirement of due process. See *Mobil Exploration & Producing U.S. Inc. v. Kansas Corporation Comm'n*, 258 Kan. 796, 821, 908 P.2d 1276 (1995). A hearing with adequate notice before the Executive Director of the Kansas Lottery would satisfy due process requirements. Had the trial court in this case remanded the matter to the Executive Director under the provisions of K.S.A. 77-619(b), due process rights of all parties would

have been preserved. However, the admission of the additional evidence which resolved a contested fact as to whether two tickets were sold without the right of cross-examination had the effect of denying Reifschneider due process of law. I would therefore reverse and remand to the trial court with directions that it receive additional evidence under the provisions of K.S.A. 77-619(b) or remand to the Executive Director for a hearing with notice to all parties, thus providing all parties with an opportunity to be heard on this issue.