(231 P.3d 1080)
No. 101,933

STEVEN M. CONROW, *Appellee*, v. GLOBE ENGINEERING CO.,
INC., and FEDERATED MUTUAL INS. CO., *Appellants*.

Opinion filed May 28, 2010.

*Vincent A. Burnett* and *Dallas L. Rakestraw*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellants.

*John L. Carmichael*, of Conlee, Schmidt & Emerson, LLP, of Wichita, for appellee.

Before HILL, P.J., PIERRON, J., and BUKATY, S.J.

HILL, J.: In this appeal, we affirm the Workers Compensation Board's award of permanent total disability benefits to Steven M. Conrow. Conrow's former employer, Globe Engineering Co., Inc., and its insurer argue against the award, contending the evidence is insufficient to support the Board's finding that Conrow was unemployable. Looking at the record as a whole, including the evidence that detracts from the Board's findings, we hold that substantial competent evidence supports the Board's conclusion that Conrow was realistically unemployable since he can no longer work

with his hands and arms. We do not consider the employer's contention that Conrow was not entitled to benefits because he did not have both arms amputated because Globe did not raise that issue before the Board.

*Conrow's work history is steady.*

Beginning in 1979, Conrow worked for Globe in the "burn shop" where he used vibrating tools. After a few years he began to experience numbness in his hands and shoulders. His fingers started to hurt and tingle. Conrow continued to work for Globe until his discharge in November 2005. After that, Conrow worked at G&D Metals.

Immediately following his discharge from Globe, Conrow sought workers compensation benefits in November 2005. Conrow claimed he suffered injury or disease due to the repetitive use of the vibrating tools. The administrative law judge agreed, holding Conrow was entitled to compensation for scheduled injuries to his left and right forearms and his left and right arms. Later, this award was affirmed by the Board in 2007.

But Conrow's condition worsened. Conrow suffers from a congenital defect of his joints known as arthrogryposis. He then sought a review and modification of his workers compensation award. This time Conrow argued he suffers from a permanent total disability since he lost his job at G&D Metals because he was no longer physically capable of performing his assigned tasks. Further, he alleged that despite an active job search, he was never offered a job.

Despite vigorous opposition by Globe, the administrative law judge concluded that Conrow was realistically unemployable "and therefore permanently and totally disabled." Globe appealed the matter, and the Board upheld the award. The Board decided that Conrow was entitled to permanent total disability benefits for three reasons.

First, Conrow had proved a change of condition or circumstance to the extent that a modification of his award was permitted. Second, Conrow proved he had suffered injuries to both upper extremities which results in a presumption of permanent total disa-

bility. Third, Globe never rebutted this presumption of total disability. Simply put, Conrow was "essentially and realistically unemployable." It is from this award that Globe appeals.

*We recite our standard of review.*

With the statutory changes made in 2009, our standard of review on cases arising from agencies when considering questions that must be decided "in light of the record as a whole" has been modified. See K.S.A. 2009 Supp. 77-621(c)(7), (d). Under the Kansas Judicial Review Act, this court must now take into account all of the relevant evidence that detracts from a finding as well as the evidence that supports a finding when deciding if a finding is supported by substantial competent evidence. See K.S.A. 2009 Supp. 77-621(d); *Herrera-Gallegos v. H & H Delivery Service, Inc.*, 42 Kan. App. 2d 360, Syl. ¶¶ 1 and 3, 212 P.3d 239 (2009). Simply put, we look now at *all* of the evidence when we examine the Board's findings.

Additionally, we must now consider any explanation the Board may give on why the Board disregards any "determination of veracity" that may have been made by the administrative law judge who had the opportunity to personally observe the demeanor of any witness. Unchanged in our review is the rule that we will not reweigh the evidence, nor will we perform a de novo review. See K.S.A. 2009 Supp. 77-621(d); *Herrera-Gallegos*, 42 Kan. App. 2d 360, Syl. ¶¶ 2-3.

*Conrow's testimony that he felt he could work does not destroy the Board's finding that he was unemployable.*

The only issue Globe properly preserved for appeal is whether the Board arbitrarily ignored Conrow's testimony that he believed he was able to work and wanted a job. Further, Globe contends no evidence contradicts Conrow's statements. We believe that Globe confuses the Board's weighing of Conrow's testimony with the testimony of others as ignoring evidence. Globe is incorrect.

Indeed, Conrow testified he worked for G&D Metals in March 2006. Conrow explained that he left G&D Metals because it "ran out of work" that he could do. Conrow stated he applied for employment at 220-230 places after December 2007. No one offered

him a job. Conrow knew of no open and available job that he could do. Conrow stated that if he had his choice, he would be working. Conrow agreed he was ready, willing, and able to be employed and had to find "the right fit" with his arthrogryposis. Conrow stated he thought he was employable within certain limitations. These words are the vain hope of a proud man wanting to work. The independent and unemotional testimony of Dr. George Fluter and Jerry Hardin paint a starker picture.

Here, Dr. Fluter characterized Conrow as "essentially and realistically unemployable." Fluter explained Conrow had an underlying arthrogryposis condition, limited sensory sensitivity in his hands and fingers when doing activities that affected his ability to do basic daily activities, reduced grip strength in his hands, and changes in range of motion in his fingers—all of which made it "difficult for him to really do much work with his upper extremities on a regular and consistent basis." Fluter testified he did not expect Conrow would be able to operate a keyboard, do clerical filing work, make change for money, or perform a job involving grasping or gripping of the hands.

Then, Hardin, the vocational expert, testified it was his opinion Conrow had a 100% work task/job loss, was essentially and realistically unemployable, and was unable to obtain or perform substantial and gainful employment. Hardin stated his company would not work with Conrow as an applicant for employment based on his current restrictions and limitations and his inability to even fill out an employment application. Hardin recognized Conrow was working part-time at one time but stated Conrow was realistically unemployable for purposes of substantial gainful employment on a full-time basis in the open labor market.

The Board quite properly took all of this evidence into account when it decided Conrow was entitled to total disability benefits:

"The Board concludes respondent has failed to rebut the presumption that claimant is now permanently and totally disabled after injuring both of his upper extremities working for respondent. Indeed, the greater *weight* of the evidence supports that presumption. For example, respondent employed claimant as a working supervisor and, unfortunately, claimant is no longer able to work with his hands. Likewise, claimant performed a rather extensive job search and was unable

to find that special fit or special accommodated position, which respondent's vocational expert indicated would be required to return claimant to work. Considering claimant's injuries, education, and work experience, there is ample evidence that claimant is essentially and realistically unemployable." (Emphasis added.)

We must conclude that substantial competent evidence supports the Board's finding that Conrow's testimony suggesting he *was* employable was outweighed by the testimony of Dr. Fluter and Hardin, in the view of the Board. We will not reweigh that evidence. Furthermore, we see nothing in the record that indicates the Board disregarded any undisputed evidence. The Board's conclusion that the greater weight of the evidence supported the presumption that Conrow was totally disabled is supported by this record. We will not disturb the Board's finding in this regard.

*We will not entertain arguments not made to the Board.*

In this appeal, Globe vainly tried to argue that Conrow was not entitled to permanent total disability benefits because both of his arms had not been amputated. In other words, Conrow did not suffer a complete loss of both arms as contemplated in K.S.A. 44-510c(a)(2). This argument was not raised before either the administrative law judge or the Board. Globe claims this court should address this issue, in spite of it failing to raise it before, since it is simply a question of law. In support, Globe cites *Pierce v. Board of County Commissioners*, 200 Kan. 74, 434 P.2d 858 (1967), and *In re S.D.*, 41 Kan. App. 2d 780, 204 P.3d 1182 (2009).

Those two cases are unpersuasive. In *Pierce* the court considered a claimed violation of a constitutional right not raised until appeal. 200 Kan. at 80-81. In *In re S.D.*, a panel of this court addressed a statutory interpretation question not raised in the district court. 41 Kan. App. 2d at 787-88. Both cases dealt with issues not raised in district court, rather than issues not raised before a state agency.

We hold that entertaining questions that are not raised before the Board or any state agency violates the doctrine of operative construction. Our Supreme Court has defined the doctrine:

"The interpretation of a statute by an administrative agency charged with the responsibility of enforcing a statute is entitled to judicial deference and is called the doctrine of operative construction. Deference to an agency's interpretation is particularly appropriate when the agency is one of special competence and ex-

perience." *Reifschneider v. Kansas State Lottery*, 270 Kan. 560, Syl. ¶ 2, 17 P.3d 907 (2001).

Parties should not be allowed to bypass a state agency's special competence and experience either through inadvertence or intentionally. Fundamentally, state agencies, such as the Board here, that have special expertise must be given every opportunity to interpret the particular statutes dealing with their field of enforcement. Therefore, we find it inappropriate to entertain Globe's claim that K.S.A. 44-510c(a)(2) has been interpreted incorrectly because the argument was not first presented to the administrative law judge or the Board.

Affirmed.