NOT DESIGNATED FOR PUBLICATION

No. 128,596

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KENT T. WARREN,
*Appellant*,

v.

UNIVERSITY OF KANSAS,
*Appellee.*

MEMORANDUM OPINION

Appeal from Douglas District Court; MARK A. SIMPSON, judge. Submitted without oral argument. Opinion filed January 16, 2026. Appeal dismissed.

*Kent T. Warren*, appellant pro se.

*Eric J. Aufdengarten*, University of Kansas Office of General Counsel, of Lawrence, for appellee.

Before ARNOLD-BURGER, P.J., MALONE and BOLTON FLEMING, JJ.

PER CURIAM: Kent T. Warren sought judicial review of the University of Kansas agency action dismissing his Title VI complaint alleging discrimination on the basis of national origin. The district court found that Warren failed to meet his burden and dismissed his petition. Because we find that Warren failed to file his petition challenging the agency action within 30 days of the final agency action, the district court lacked jurisdiction to hear this matter. If the district court lacked jurisdiction, so do we. Accordingly, Warren's appeal is dismissed for lack of jurisdiction.

1

FACTUAL AND PROCEDURAL HISTORY

The facts are not in dispute.

Warren graduated high school in 1989. He does not have an undergraduate degree although he has enrolled in some college coursework. He alleges he has experience in the area of teaching, but the details are vague at best. He was removed from an online teacher certification program at Western Governor's University (WGU) for poor performance.

In October 2023, Warren emailed the University of Kansas (KU) and asked if work and or life experience could be used as degree equivalency at the university for him to enter graduate school.

Warren was advised that the university had two minimum requirements for admission: proof of a bachelor's degree from a regionally accredited United States institution or equivalent degree from a foreign university and proof of English proficiency for nonnative and nonnative-like English speakers. He was advised of the contact information for the university's graduate program and told to contact them with additional questions.

Warren was separately informed through a "HawkHelp Ticket" that for general admissions to undergraduate programs, there is no converter for work or life experiences. Also, "[f]or graduate school there is some exceptions to this and would be best contacting the department directly."

This was and is a correct statement of University policy, and there are no exceptions for persons who have a national origin other than the United States. Nor does Warren cite any federal law that requires the University to provide credit for life and work experience.

Warren did not apply for graduate school.

In November, Warren submitted a report to the University of Kansas Office of Civil Rights and Title IX (OCR). While citing various laws and regulations, his report stated the following:

"On October 16 and 17 of 2023, the complainant was informed by emails, graduate and undergraduate, that work and/or life experience cannot be used as a degree equivalency by the University of Kansas. However, this discriminatory behavior has occurred for at least a decade; albeit, the complainant has attempted to file on several occasions while removing life and/or work experience lowering the complainant's position/argument to that of potentially unintelligible."

In his report, Warren alleged national origin discrimination because aliens are permitted to use work experience as entrance to a host of professions, including teaching, while a U.S. citizen is not allowed to use life experience for college credit or degree equivalency.

In the same report, Warren claimed that he has

"earned the capacity to create a teacher's education program through work experience-clinical director; I have earned the capacity to adjudicate administratively, based on work experience—these in different states.
"I have performed professional development at the PhD level—work experience again—accomplishing all endeavors necessary to practice at Phd level—elementary education."

In December 2023, Warren filed a formal complaint with the OCR asserting the same allegations of discrimination. The complaint stated:

"Complainant requested information detailing the use of life and/or work experience as valid degree equivalencies.

3

"Complainant was denied.

". . . [C]omplainant's national origin is the United States, meaning the complainant was born in the United States. The complainant is requesting information on admissions consuming life and/or work experience as valid degree equivalencies to enter the profession of teaching.

"Complainant was denied from under/graduate admissions, see emails attached below, attachments 2 and 3. This denial has occurred since 2013 at least (regardless of the nature of communications)."

The following month, the OCR Investigator, Casey Smith, interviewed Warren. Warren explained that he was seeking a teacher certification based on his life experience following his graduation from high school in 1989. He has also had about 20 communications with KU since 2013 in which KU had explained that it did not take life or work experience into consideration for academic credit or degree completion.

Warren stated that he took courses at various universities. Warren stated that he has never applied for admission to KU but had requested information on whether work experience would be acceptable in lieu of a degree.

Smith asked Warren if he thought that KU had intentionally denied any information or a potential application based on his national origin. Warren answered in the affirmative and alleged that because aliens are allowed to use work experience under federal law at KU and citizens are not, it is a potential violation or discrimination based on national origin.

In January 2024, KU dismissed Warren's complaint because the alleged conduct did not constitute discrimination. Smith explained that because Warren did not apply for admission to any KU program, he was not denied admission to KU. Smith also found that the Office of Graduate Admissions did not deny Warren any information, evidenced by an email exchange that Warren submitted in his complaint. And although Warren could

4

not recall whether he disclosed his national origin to any staff in Graduate Admissions, he did not disclose it in any application, because he had never applied.

Finally, Smith explained that the decision to refuse the use of Warren's life and/or work experience towards degree credits was not based on his national origin, as someone from the United States, but instead was based on the Graduate Studies Policy that applies to *all* individuals as graduate students, prospective students, or applicants, regardless of their national origin. Therefore, Smith concluded that the University of Kansas Office of Graduate Studies' refusal to use Warren's life and/or work experience did not rise to a violation of the Nondiscrimination Policy. Smith administratively closed the case without an investigation as the conduct alleged in the complaint did not constitute discrimination under the OCR policy.

In February 2024, Warren appealed Smith's decision to KU's Provost. Warren again laid out his complaint grounded in his claim that he was discriminated against based on his national origin. He cited various portions of federal law and regulations, including Title 8 United States Code § 1182(a)(5)(A) and C.F.R. § 214.2(h)(4)(iii)(C)(4). He stated that he has approximately 160 hours of college credit with another 20-30 hours needed to graduate at an approved program of study as an undergraduate, and that he is not able to teach in a school district. Warren also stated he "desires access to the profession of teaching under equitable circumstances of that of an alien." He conceded that he could not "argue with in terms of graduate coursework." But he continued to claim that "it is a violation of federal law against aliens, and that violation does in fact cause my asserted violation."

On February 27, 2024, KU's Provost, Barbara A. Bichelmeyer, notified Warren that his appeal was denied. Bichelmeyer found that the OCR conducted a thorough investigation of Warren's allegations and correctly determined that the alleged conduct

5

did not constitute discrimination, even if proven. Bichelmeyer stated that Warren's appeal was denied because in addition to the OCR analysis, Warren "already brought this complaint, and it has been reviewed at multiple levels." Bichelmeyer wrote, "I do not plan to do so again." Bichelmeyer reviewed Warren's previous complaint from 2018 and concluded that this new complaint provided no cause to revisit the issues. Finally, Bichelmeyer stated that "[t]he University is an agency of the State of Kansas, and th[e] letter is intended to serve as a notice of a final agency action by the University of Kansas."

In April 2024, Warren filed his petition seeking judicial review. Warren and KU waived oral argument and rested on their briefs. The district court found that Warren failed to meet his burden of proof that the agency action was invalid on any of the statutory grounds claimed, and that he did not establish a prima facie case of discrimination. The district court adopted the relevant facts, law, analysis, and arguments submitted in KU's proposed journal entry.

Warren appeals.

ANALYSIS

To begin with, because Warren's argument is somewhat abstract, we believe it is helpful to the reader to outline, as best as we can determine, exactly what is behind his claim that he should be given credit for life experience as the equivalent to a bachelor's degree so that he can be admitted to graduate school.

Warren contends that KU's policy barring graduate or undergraduate credit for life and work experience is discriminatory, pointing solely to federal immigration rules to support his position. Under federal visa requirements, certain noncitizens may use work experience in lieu of formal degrees to meet visa qualifications. Warren's argument then

6

takes a quantum leap. He argues that this federal recognition of experience as a substitute for a degree in the visa application context must be applied universally in the nonimmigration context to *require* schools to accept experience equivalency for a degree. He argues that KU's failure to do so treats United States citizens differently, raising potential equal protection and discrimination concerns.

Warren fails to recognize that qualifying for a work-based visa is a complex process requiring employer sponsorship, credential evaluation, and documentation of progressively responsible work. Even when immigration authorities accept work experience as equivalent to a degree for employment purposes, these federal immigration visa requirements do not confer an academic credential or credit. Immigration equivalency is purely administrative and separate from university academic standards. That said, Warren contends that because work experience in lieu of a formal degree is enough to allow entry into this country through a visa, in order to comply with the Equal Protection Clause of the United States Constitution, KU is obligated to award credit for life or work experience toward a degree to United States citizens.

And he has made this argument frequently in litigation. This is at least the fifth case—all unsuccessful—in the last 10 years in which Warren has brought claims alleging he has been discriminated against while seeking to obtain a teaching license without first completing a bachelor's degree. See *Warren v. United States Dept. of Education*, No. 22-3252, 2023 WL 5012093, at *4 (10th Cir. 2023) (unpublished opinion), *cert. denied sub nom. Warren v. Dept. of Education*, 144 S. Ct. 1062 (2024); *Warren v. United States Dept. of Education*, No. 21-4085-JAR-ADM, 2022 WL 13958820, at *4 (D. Kan. 2022) (unpublished opinion), *aff'd* No. 22-3252, 2023 WL 5012093 (10th Cir. 2023) (unpublished opinion); *Warren v. University of Illinois-Champaign/Urbana*, No. 19-4094-SAC-ADM, 2020 WL 1043637, at *3 (D. Kan. 2020) (unpublished opinion); *Warren v. United States*, No. 17-1784C, 2017 WL 6032312, at *2 (Fed. Cl. 2017)

(unpublished opinion); *Warren v. Warren*, No. 15-4878-SAC, 2015 WL 3440483, at *3 (D. Kan. 2015) (unpublished opinion).

*Because he failed to file this action before the district court in a timely manner, the district court lacked jurisdiction to hear this case and so do we.*

As a threshold matter, as in all cases, we must first determine whether we have jurisdiction to hear this matter. Whether jurisdiction exists is a question of law, subject to unlimited appellate review. *City of Wichita v. Trotter*, 316 Kan. 310, 312, 514 P.3d 1050 (2022).

Actions by the University of Kansas are subject to the Kansas Judicial Review Act (KJRA). See *Harsay v. University of Kansas*, 308 Kan. 1371, 1380, 430 P.3d 30 (2018); *Gaskill v. Fort Hays State University*, 31 Kan. App. 2d 544, 545-46, 70 P.3d 693 (2003). The Kansas Supreme Court has explicitly stated that strict compliance with the KJRA's procedural requirements, including timely filing, is necessary for a court to exercise jurisdiction over a petition for judicial review. *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 397, 204 P.3d 562 (2009). The KJRA proscribes that "a petition for judicial review of a final order shall be filed within 30 days after service of the order." K.S.A. 77-613(b).

Warren filed his petition for judicial review on April 8, 2024, 41 days after the final agency action. But the 30-day time limit does not begin to run until the final order was served on Warren. K.S.A. 77-613(b). Here, the final action by the Provost indicates on its face that it was emailed to Warren on the day it was issued—February 27, 2024. And there is no dispute that it was emailed to the only email address Warren has ever provided in the case to KU, the district court, and this court. But that alone was not sufficient service.

8

Electronic service, which would include email, will suffice if it is allowed by Supreme Court rule or local rule. K.S.A. 77-613(e)(3). Although it was later rescinded, in February 2024 Supreme Court Administrative Order 2023-RL-077, effective November 9, 2023, stated that "[w]hen any party is a self-represented litigant, all parties must consent in writing to service by email." There was no actual Supreme Court rule governing service by email then, nor is there now, just the administrative order. Likewise, the Douglas County District Court, where this case was initially filed, had Rule 25(D) which provided that in order to serve a self-represented litigant by email, the "self-represented litigant must agree in writing, after initial service has been perfected or waived, and the written agreement must be filed with the court." There is no written waiver in the file from Warren. So standing alone, email service was not allowed. He needed to be served by mail or personally. K.S.A. 77-613(e)(1), (2). The record does not reflect if either of those alternative methods were used.

That said, Warren concedes service in his petition: "Petitioner receives final determination on February 27, 2024." And he never disputes service in any subsequent filings, including his response to our show cause order regarding jurisdiction. "Except to the extent precluded by another provision of law, a person may waive any right conferred upon that person by this act." K.S.A. 77-604.

And even if he had not conceded service, substantial compliance with the statute is allowed. After the Supreme Court entered its ruling in *Reifschneider v. State*, 266 Kan. 338, Syl. ¶ 3, 969 P.2d 875 (1998), finding that the KJRA contains no provision for substantial compliance with the service requirement, the Legislature amended the statute to statutorily allow for substantial compliance.

> "(e) In any method of serving process, substantial compliance shall effect valid
> service of process if the court finds that, notwithstanding some irregularity or omission,

9

the party served was made aware that the petition or appeal had been filed." K.S.A. 77-614(e); L. 2009, ch. 109, § 26.

See *Fisher v. DeCarvalho*, 298 Kan. 482, Syl. ¶ 2, 314 P.3d 214 (2013) (applying a similar statutory substantial compliance exception as it relates to the method of service under K.S.A. 60-204). Again, there is no dispute that Warren received actual notice of the final agency action on February 27, 2024. Thus, not withstanding the omission of a waiver form in the file, he was aware of the agency decision.

All of this means that Warren would have had until, at the latest—assuming a three-day extension for email notice—until March 31, 2024, to file this action. See K.S.A. 77-613(e)(3) (if a notice is sent by electronic means, three days is added to the prescribed period). Instead his petition for judicial review was filed on April 8, 2024, 41 days after service of the order.

In response to a show cause order in this case, Warren presented evidence that he attempted to file this action in the district court on March 28, but it was rejected due to an inadequate filing fee. He was notified that his filing was not accepted on March 29, 2024. At that point he was still within his time to file this action. Yet, he waited until eight days after the deadline of March 31 to correct his filing. He provides no explanation or legal excuse for the additional delay.

Warren's petition was not filed timely, as required by statute. A pro se litigant is required to follow the same rules of procedure which are binding upon litigants who are represented by counsel. They cannot be given either an advantage or a disadvantage solely because of proceeding pro se. *Joritz v. University of Kansas*, 61 Kan. App. 2d 482, Syl. ¶ 2, 505 P.3d 775 (2022). If the district court lacked jurisdiction to hear this matter, so do we. See *Nicholson v. Mercer*, 319 Kan. 712, 714, 559 P.3d 350 (2024) (holding that

if the district court lacked jurisdiction to enter an order, an appellate court does not acquire jurisdiction over the subject matter on appeal).

Appeal dismissed for lack of jurisdiction.